UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA : | CASE NO. 00-6334 | |
| : | CR - FERGUSON | |
| Plaintiff, : | | |
| vs. : | | |
| : | Fla. Bar No. 100028 | |
| LOUIS FRANK PETRILLO, : | | |
| : | | |
| Defendant. : | | |

### DEFENDANT'S OBJECTIONS TO THE DECEMBER 5, 2000 ORDER
### OF THE MAGISTRATE DENYING BOND TO DEFENDANT

Defendant, Louis Frank Petrillo, by counsel, respectfully, pursuant to 28 USC 636, *et. seq.*, files the following objections to the Order of the Honorable Lurana Snow, Magistrate Judge, denying bond to the Defendant. Defendant requests De Novo review and Hearing since it appears that the Defendant's pre-trial detention does not serve the ends of justice, the public interest, nor is his detention justified by the undisputed factors which were before the learned Magistrate-Judge, based upon applicable law..

### I
### Portion of the proposed findings, recommendations
### and report to which objections are made

Defendant, respectfully objects to the following findings, recommendations and report of the learned Magistrate-Judge, as set forth in the Detention Order ( Exh. 1) issued December 6, 2000.

1.    That the substantial weight of the evidence precludes release on any condition whatever. [Exh. 1, Page 2]

2.    That Defendant had threatened the life of "Larry" (sic) Pinkoff. [Exh. 1, Page 3, 4]

3.    That the safety of Probation Office, Frank Will, is in danger [Exh.1, Page 3, 4]



4.      That there are no conditions or combination of conditions which reasonably will

        assure the defendant's appearance as required and/or the safety of any other person

        and the community. [Exh. 1, Page 4]

5.      That [implied] the Defendant is a flight risk. [Exh. 1, Page 3]

6.      That the Defendant should be denied bond on any conditions. [Exh. 1, Page 3]

7.      The learned Magistrate-Judge's personal dislike of the use of "Bracelets" on a pre-

        trial defendant, as a condition of release denies Defendant equal application of bond

        release available to other Defendants appearing before other Magistrates with no such

        belief.

The learned Magistrate-Judge appears to have, inadvertently, erred in applying the law to the

proffer of facts made by the AUSA and therefore erred in denying Defendant bond on any condition,

in her conclusion at the end of the Hearing, to wit: Tr. 43

The Court:    Clearly, this Defendant is a risk of flight because he has access
              to very substantial amounts of money which he reported to no one (sic)
              and is apparently, to some degree, invested overseas.

              The fact that he has not fled as yet is not particularly persuasive since
              he though he would be able to prevail on the probation violation because
              of the document he created  He is also a danger to other persons.
              I am not going to find danger to the community.  It seems to be focused
              on the probation officer and after today perhaps on the confidential witness.
              Therefore, pre-trial detention will be ordered on those two grounds...

## II
## Omnibus Argument On Objections Numbered 1-7

The Defendant is charged by Indictment [Exh. 3] only with causing or assisting in causing,

preparation of a "backdated" promissory note and draw requests, which the AUSA handling his

Probation Violation Hearing suspects to be false and which might be intended for use in an eventual Hearing, all in violation of 18 USC 1503. Upon Hearing, Defendant was denied bond. Tr. 1 - 47. Inadvertently, the learned Magistrate-Judge appears to have erred in denying bond to the Defendant in this cause, since as shown by the Transcript of Hearing, he met all requirements for release set forth in 18 USC 3141(a), 3142 and 3145(b) and otherwise, and is presently on a $250,000.00 surety bond for an alleged probation violation for a 1995 conviction, by plea of guilty, to a prior, 1993, embezzlement charge. [His probation on the prior charge expires in February, 2001] Tr. 1-47

The learned Magistrate-Judge's personal opinion, that "bracelets" are of no value in pre-trial matters and her decision not to consider any further release conditions [as required by 18 USC 3142(B)] is also raised, since it appears to deny Defendant substantial statutory rights available to Defendants who appear before other Magistrates in this District   Tr. 41 ["we will accept any condition you say],   Tr. 46 [I have never used them (bracelets)   I don't think they are useful or helpful...]

The purpose of the Bail Reform Act of 1966, enacting sections 18 USC 3146 to 3152 and amending 18 USC 3041, 3141 to 3143 and 3568 was to revise the practices relating to bail to assure that all persons, regardless of their financial status, shall not needlessly be detained pending their appearance to answer charges, to testify, or pending appeal, when detention serves neither the ends of justice nor the public interest.

18 USC 3142(c) requires that, if, as here, a judicial officer determines that the release of a pre-trial detainee will not reasonably assure the appearance of that person as required or will endanger the safety of another person or the community, such officer *shall (emph. supp.)* order the release of the person- subject to the least restrictive further conditions, that such judicial officer determines

will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person meet further conditions set forth in 18 USC 3142 (A)(B) (i) through (xii).

Here, inadvertently, the Magistrate ended her consideration when she made her initial determination that the release of Mr Petrillo, a pre-trial detainee, would not reasonably assure his appearance, because she believed the governments unproved allegation that he had access to monies abroad, or that because there might be animosity between him and his Probation Officer or a newly disclosed confidential informant, based on rather slim underpinnings. *[infra].* Exh. 1, Page 4

Respectfully, the Magistrate was, respectfully, required by 18 USC3142(c), to [such officer *shall (emph. supp.)* order the release of the person-] continue her findings to attempt to fashion the least restrictive conditions to reasonably assure the appearance of Mr. Petrillo, as required and the safety of any other person. 18 USC 3142(B), which Mr. Petrillo, by counsel requested be done

> 18 USC 4142(c) **Release on conditions.-**(1) If the judicial officer determines that the release described in subsection(b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person-
>
> (A) subject to the condition that the person not commit a Federal, State or local crime during the period of release; and
>
> (B) subject to the least restrictive further conditions, that such judicial officer determines will reasonably assure the appearance of the person and the safety of any other person and the community, which may include the condition that the person- *[See subdivisions (i) - (xiv)*

For the reasons of fact, law and logic, the Defendant-prisoner asks that he be afforded review and application of 18 USC 3142(c) and such other relief as the District Judge deems fit and proper, including release on conditions.

## III
## Review of Factors in Issue

1. The nature and circumstances of the offense charged: Defendant is charged under 18 USC 1503, for an alleged obstruction of justice by allegedly preparing a "backdated" promissory note. with periodic draws, which AUSA, Lehner, speculated might be used in Defendant's Probation Violation Hearing set for December 1, 2000. Tr 8, Exh. 3 AUSA Lehner, who prosecutes this case, also prosecuting the Probation Violation Hearing, appears to have learned of the note's existence approximately 30 days prior to the Hearing, from an video/audio tape or informant. On November 30, 2000. AUSA Lehner presented and obtained an Indictment of Defendant, signing the Indictment himself. AUSA Lehner also seized a note or a copy, as evidence, which he believed to be the note in issue, at a November 27, 2000 conference he attended with Defendant's legal counsel and an accountant working under the legal counsel. which note was, presumably, presented to the Grand Jury. Defendant-Petrillo was not at the conference. Tr. 11, 12,

Then, on December 1ˢᵗ, the AUSA sought continuance of the Probation Violation Hearing. Exh. 4, one business day prior to the Hearing, indicating that Mr Petrillo's attorney had a "conflict" and the attorney [ and obviously AUSA Lehner too] would be a fact witness in the criminal case. [ But see; U.S. v Moon, infra, 718 F.2d 1210 (2ⁿᵈ Cir 1983), holding preparation of a "backdated". or even false, document is not, in and of itself, a crime, if not intended to be used to obstruct justice]

AUSA:          "So these various line of credit draw requests showing
               loans to Petrillo were again done on the 26ᵗʰ of October
               of this year by Mr Petrillo on audio/videotape to try to
               obstruct justice in the probation violation that was to be
               conducted today before Judge Zloch." Tr. 10

               "Then on November 27ᵗʰ, as shown in the indictment. another
               event occurred. Mr. Petrillo's – Mr. Petrillo's attorneys –
               attorney, rather, Rubin Oliva and Mr. Oliva's forensic accountant.

> Mr. Foodman, F-o-o-d-m-a-n, appeared in our offices, the U S
> Attorney's office in Miami, and with Mr. Sellers, who is here in
> Court with me, and we met with Mr. Oliva and Mr. Foodman.
> Mr. Sellers is a financial auditor with the economic crime section
> of the US. Attorney's office in Miami.
>
> At that time the very documents, some of the very documents
> that were seen on the audio/video surveillance of October 26th
> were submitted to Mr. Sellers and myself (sic) by Foodman, the
> forensic accountant, and Mr. Oliva. the defense attorney for Mr.
> Petrillo, urging us to believe that these monies that we knew from
> - - from bank records and from an interview with Mr Pinkoff were
> income from Mr. Petrillo.
>
> Mr Foodman and Mr. Oliva urges us to believe that these were just
> loans, and that the bank records showing monies going into Mr.
> Petrillo's bank account were not income to him and that he, Mr.
> Petrillo, was being truthful with the probation officer when he
> stated his income was $50,000 a year." Tr. 11, 12

The Defendant is not charged with any crime of violence and no narcotics are involved; he is presumptively innocent. Tr. 1- 47 The charge alleges a "garden variety" violation of preparing a "backdated" document which may, in the final analysis, be found by a jury to reflect the true nature of events. . a completely, non-violent, accusation.

Here, at this juncture, there appears insufficient proof of an obstruction of justice by Mr Petrillo, even under the relaxed standards of 18 USC 1503. *Aguilar v. United States*, 515 U.S. 593 (1995). To prove an obstruction of justice, the government must prove that the actions the defendant agreed to take would violate 1503, that is, would have the "natural and probable effect" of interfering with the due administration of justice in a way that is more than merely speculative. *See United States v. Aguilar, supra,* 515 U.S. 593, 598 (1995).

In *Aguilar, supra,* which would control over earlier decisions, a United States District Judge

was charged and convicted of one count of 18 USC 1503 for lying to F.B.I. agents who were

investigating an alleged conspiracy to influence the outcome of a habeas case pending in the district

where he served  The Supreme Court, however, found there to be insufficient evidence to support

a conviction under 1503. *See Aguilar, supra, at 606.*  Although a grand jury had already begun

investigation into the conspiracy, the Court found that the evidence offered by the government to be

insufficient to support a conclusion "that [Aguilar] knew that his false statement would be provided

to the grand jury or authorized it to be so used. *Id at 601.* [ And, no such evidence has been

presented, as to the Defendant, *sub judice.* Tr. 1-47]  Instead, in *Aguilar,* the Supreme Court found

the evidence to "go no further than showing that [Aguilar] testified falsely to an investigating agent,

"and that such conduct ... falls on the other side of the statutory line from that of one who delivers

false documents or testimony *to the grand jury itself* . *Id.*

       To the same effect, the Court noted, it this very same act of giving false testimony to F.B.I.

agents had formed the basis of an agreement between Aguilar and another; neither Aguilar nor the

"other" could  have been found guilty of conspiracy to obstruct justice, because the act he would

have conspired to commit would not have been itself illegal *Id.*

       Perhaps, sensing that its Indictment for violation of 18 U.S.C  1503 was questionable, the

government knew it could not  deny the Defendant bond if it relied solely on the conduct charged in

the Indictment.  To overcome this obstacle, the government sought to ....  and succeeded ... under

the relaxed evidentiary requirements of a bond hearing..... and a busy  Magistrate court, with limited

time,  to  orally allege and weave a vast, imaginary, unrelated, ongoing conspiracy of lawyer

involvement in  the 1503 charge, Tr. 11, 12,  business trips to Europe and Costa Rica for his

employer, Tr 14, Tr. 14, reduction in the amount of restitution required which Judge Adkins found

Page 7 of 16

to be the correct amount in his former bank embezzlement case, Tr. 16, Tr. 17, and wanting his Probation Officer to "suffer". Tr. 17, 18. [All of the above travels were authorized, prior to travel, by Mr. Petrillo's Probation Officer; and all required financial matters were disclosed to the Probation Officer in monthly reports and access to Mr. Petrillo's employer records Tr. 29

As to the "suffering by litigation" [ Mr. Petrillo had indicated he was going to sue his Probation Officer for continual harassment and had made complaints to his Probation Officers superior, Tr. 30] which Defendant wished on the Probation Officer, the AUSA proffered: Tr. 17

By the AUSA    "Additionally, he takes issue with the Court through its Probation
              Officer by - - he threatens on the audio/visual surveillance - - a
              representative of this Court who is supervising him. He threatens (sic)
              On the audio/visual surveillance - - he threatens that Probation Officer
              by saying, "He will be a lot worse off than you and me, "indicating the
              "you" being Mr. Pinkoff. "After this is over he's going to be suffering
              a lot more than you and me." Tr. 17

The "suffering" of the Probation Officer is accounted for by the Defendant's plan to sue him Tr.30, of which the government, assuredly, is aware, is no more than the expressed longing of most supervised felons, who uniformly believe they have been wronged and such feelings are hardly disturbing to any seasoned Probation Officer, Judge, Defense Attorney or Prosecutor, all of whom a convicted felon wishes to suffer for his plight.

An underlying reason the Probation Officer [and perhaps the AUSA] appear to be offended and bent on redress, may be explained by the Audio/Visual transcript (A/VTr ), [ in exclusive possession of the AUSA, Tr. 20] which shows Mr. Petrillo sometimes referred to his Probation Officer as a " *Prick*" (sic), which no doubt offended the Probation Officer.

For those who never served in the United States military or engaged in "locker room talk", "*prick*" is a shorthand term, a universally used and instinctively understood term to describe members

Page 8 of 16

of the male gender, aptly and concisely in a certain fashion. The term is generic and, in truth, far less offensive than other, more offensive, terms which are commonly used to convey similar, but more intensive feelings . [ *More offensive expletives deleted]* The Probation Officer's offense to his dignity and position, at being referred to by the *expletive* in question and wishing to visit retribution on the Defendant is understandable, but hardly grounds for fear by any red blooded practitioner in the criminal justice system of the Southern District of Florida, nor is it a substantial reason to imprison an accused without bond for allegedly "backdating" a promissory note.

Lastly, in an intended moment of drama and intrigue ...the AUSA alleged that an uncorroborated, newly converted, confidential informer, [ now on the government team and obviously seeking "substantial assistance" for his own misdeeds ... a Mr. "Pinkoff", *infra]* has posited that Mr. Petrillo not only wants the maligned Probation Officer to "suffer", but doesn't even want him around. Tr. 18 The prosecutor, Robert Lehner, AUSA, [himself an expected witness in this case] proffered this legally and factually, unsupported accusation.: Tr. 18

AUSA.       "And on other occasions (sic) threatened the actual life of the Probation
            Officer, although - - not tape recorded. "After this whole thing is over,
            Frank," "indicating Frank Will" (sic), "Isn't going to be around anymore "
            and that Mr. Petrillo stated he was not going to have anything to do with
            it but that he knew people who could take care of it and, "Don't leave me
            in a room with him alone." Tr. 18

However, on cross-examination of the government's witness, Louis Sellars, a government financial agent, the story appears somewhat different from the AUSA's proffer, and decidedly less sinister. Tr. 25 - 28

By Mr. Paglino:

Q.       Where were you when you allegedly heard Mr. Petrillo threaten the life of Mr. Will

Page 9 of 16

or anyone else.

A..     I was at the U.S. Attorney's office viewing the audio/visual tape.

Q.      And you say this was on the audio/visual tape ?

A.      One of the threats, yes.

Q       What was that threat ?

A.      "When - - after this thing is over" - - I don't remember the exact words on the tape.
        "After this thing is over he will be suffering more than me or you."

Q.      So, if he is suffering he would have to be alive to suffer, wouldn't he ?

Mr. Lehner: Objection. Argumentative. (sic)

Mr Paglino: All Right.

The Court: All right. Withdraw

By Mr. Paglino:

Q.      So did you hear any threats on the life of Mr. Will other than what you just said.

A.      Other than what has been told to me in conversations with a cooperating witness, no
        sir.

Q.      And as to these financial matters, isn't it true that all of them have been reported in
        the reports to the probation department.

A       Well - -

The Court:    I am not sure I understand the question.

Mr. Paglino:    He was talking about monies, a lot of monies, your Honor. My understanding
                is all that has been reported and accounted for with the probation....[Dept.]

. . .

By Mr. Paglino:

Page 10 of 16

Q.     Were these recorded threats ?

A.     No Sir  If I can just kind of lay out a time frame for you.  As a result of our finding
       out about the potential threats to Mr. Will's life, we then began a process - - actually
       the FBI began a process where Mr. Pinkoff agreed to have his office wired for audio
       and video.  It was after that, that we began videotaping.  But the threats to Mr. Will's
       life, according to the cooperating witness, had been made prior to.  But on the tape
       all we have is the one that he will be suffering after all these things are over.

Q.     Who is the cooperating witness ?

A.     Mr. Pinkoff.

Q.     And is he under investigation for any criminal activity.

Mr. Lehner:    Your Honor, I object.

The Court:     Sustained.

Mr Paglino:    All right.

By Mr. Paglino.

Q.     In fact, other than Mr. - - this Mr. Pinkoff was that confirmed or corroborated by
       anyone else, the threat, the alleged threat ?

Mr. Lehner:    Objection.

The Court:     Overruled.  You don't have to name the individual, just state whether or not
               it has been corroborated by anyone else.

The Witness:

A.     Other than the audio/visual, what was said on the audio/visual tape not to my
       knowledge.

Q.     All right.  And as to the financial - - all these financial dealings, isn't those matters
       that were raised before the - - in connection with the previous bond hearing and bond
       was granted, nevertheless, is that correct ?

Mr. Lehner: Objection, your honor.

Mr. Paglino: Nothing further.

The Court:    All right,  sustained.

Obviously, there is no danger to the Probation Officer or anyone else,  from the Defendant.

2.  The weight of the evidence against the Defendant:  The "weight" of the evidence against the Defendant does not appear great.  The evidence is, at best, anemic.  It is undisputed that the Defendant was not present at the time the alleged offense was committed, nor does it appear, to date, that any crime was committed by the Defendant, as alleged in the Indictment, since there is no showing or proofs proffered to date that the Defendant directed the document to be used in any particular judicial proceeding or anticipated its use  Tr. 1-47 See also,  *United States v. Aguilar,* 515 U.S. 593, 598 , 606 (1995).  The government's speculation that the Defendant may have intended such an effect would, under *Aguilar, supra,* appears legally  insufficient to convict.  Nor is there any allegation, or hint, that the  conduct alleged would be capable, in and of itself, or producing an effect which prevents justice from being duly administered.  *United States v. Howard,* 569 F.2d 1331, 1335 (5th Cir. 1978)  Nor, of course, is it a crime to assist in the creation of a "backdated" document. *United States v. Moon,* 718 F.2d 1210 (2nd Cir. 1983) [*In Moon, the "backdated" document was actually presented to a Grand Jury per its subpoena.  Moon's conviction on these grounds was reversed.  Here, there is no evidence, Tr. 1 - 47, that the document was  ever used or endeavored to be used, at least by the Defendant or at his direction in any proceeding.  Nor can we ever know, since, oddly,  the Hearing at which the AUSA  suspected the document might be entered as evidence, was continued, at the AUSA's  initial request. Exh. 4]*

In further indication of the absence of any concrete proofs available to the government, the government is presently attempting to prove its case by, *inter alia, calling the Defendant's defense*

Page 12 of 16

*counsel [Ruben Oliva, Esq.]* as a material witness to the alleged violation, apparently from his participation in some sort of Rule 11 and/or pre-hearing discussion of counsel and the AUSA,. *(Sic)*. Exh 4 Presumably, the AUSA, Mr. Lehner, will be offered as a fact witness, whether or not defense counsel is ultimately ordered to testify. AUSA Lehner, also conducted the Bond Hearing against Defendant and presented the case to the Grand Jury which indicted Defendant - Petrillo..

3. The history and characteristics of the person [Defendant]: The Defendant, a former bank president and businessman, is a short, overweight, 60 year old man, with acute diabetes, high blood pressure, bleeding intestines [he recently had abnormal growths surgically removed from his intestines] and who suffered a cardiac seizure in the FDC on December 1ˢᵗ, after his incarceration, requiring an emergency visit by a doctor on call by the prison, apparently due to deprivation of the Defendant's medication. There is absolutely no history of violence in Defendant's background or alleged at the Bond Hearing Tr. 1-47. Defendant is an honorably discharged army veteran, has been married to the same wife for almost forty years, is a very long term resident of the community, with three children, all living in the community and other long standing ties to the community. The Defendant has never sought to flee from the scheduled Probation Violation Hearing, which exposes him to a potentially longer sentence than the new 18 USC 1503 charge, under present guidelines. Tr. 30, 31, 32. Nor is there any evidence the Defendant consented to the continuation of the scheduled Probation Violation Hearing or agreed to its continuance ... or was even advised of the AUSA's request for continuance or his counsel's agreement, until after the continuance and his arrest. Tr. 1 - 47. In addition to all of his legal and medical troubles, *supra*, the Defendant must have further growths surgically removed from his bleeding intestines. Tr. 47.

In his only other criminal event, Defendant plead guilty to two counts of bank fraud [embezzlement] in United States vs. Petrillo, Case No. 93-442 Cr Adkins [now Zloch], based on the

Page 13 of 16

advice of a public defender, served an incarceration and is presently near the end of a five (5) year probation. He has made all restitution required by the Court. He has never attempted to flee the jurisdiction and has taken business trips, authorized by his Probation Officer, outside the country during his probation period  At his Probation Officer's request, he voluntarily turned in his passport some time ago. His Probation Officer was, of course, in contact with Mr. Petrillo's superior at work.

Defendant is hardly a flight risk and is not in good shape physically, sufficiently to harm his Probation Officer, who is a well built, tall, muscular young man. [Observed at Hearing] or anyone else. Defendant is an older, short, overweight man, his high blood pressure alone would probably kill him if he exerted himself and being diabetic, does not heal well. And, in the FDC, he suffered a cardiac seizure on December 1, 2000, requiring emergency medical attention, *supra*.  Tr. 31

At this writing, Defendant is kept on the 12th floor of the FDC, with violent persons, not in general population, can see no visitors, can make no calls to counsel or otherwise, making it difficult to prepare his defense, etc., classified as dangerous, high risk. (sic).

4.  The government's allegations to deny Defendant bond.: In short, the Defendant is held as a dangerous offender because of an unsubstantiated, hearsay, incredible, uncorroborated, statement from "Pinkoff", a newly converted confidential informant, lately procured by the government, or perhaps due to Defendant's *innocent, but disparaging characterization of his Probation Officer*. Nor has the Defendant been arrested for any such "threat", nor did the government appear to take "Pinkoff's" allegation seriously, since the Defendant met with the Probation Officer *after the taping and Defendant was not even searched for any weapon or questioned about the allegations.*

5.  The learned Magistrate's distrust of "bracelets": Unfortunately, the learned Magistrate-Judge does not believe in forms of community control adopted and ordered by other federal Magistrates and District Judges, i.e., use of a "bracelet", which appear effective and are in continued

use by the Courts. Because of this situation, the Magistrate declined to even consider confinement to Defendant's home, with a bracelet or other conditions of release. It is not that there are no reasonable conditions of release which the Court can fashion, but that the Magistrate, inadvertently, declined even to consider available options pursuant to 18 USC 3142, *supra*. For instance, the Defendant could easily be confined to his home, with attendant conditions, in the custody of his watchful wife of 40 years, with such added conditions imposed by the Court.

## IV
## Conclusion

Respectfully, this Defendant should be released on conditions available to the Court, as envisioned by the Bail Reform Act of 1966, 18 USC 3142 and this Court's experience, since there are available means to accommodate any reasonable concerns of the Court.

WHEREFORE, Defendant, by counsel, moves the Court for an Order releasing Defendant Pre-Trial, on his personal recognizance or upon unsecured or surety appearance bond or such conditions as the Court deems fit and proper, pursuant to 18 USC 3141(a), 3142, et. seq. & 3145(b).

## Certificate of Good Faith

Undersigned counsel has conferred with opposing counsel in good faith to resolve by agreement the subject matter of the motion, at Hearing and thereafter, but has been unable to obtain agreement, especially since it was the AUSA who argued for incarceration. hence these objections.

Respectfully submitted:

Law Office of Joseph S. Paglino
Counsel for Defendant Petrillo
12865 West Dixie Highway
North Miami, Florida 33161
Tel. (305) 758-8017

By _____
Joseph S. Paglino, Esq.

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true copy of the foregoing was furnished by mail to Robert J. Lehner, AUSA, 99 N.E. 4th Street, 4th Floor, Miami, Florida 33132-2111, this 8th day of December, 2000.

Joseph S. Paglino, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6334-CR-FERGUSON/SNOW

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | |
| LOUIS PETRILLO, | : | |
| Defendant. | : | |

FILED by _____ D.C.

DEC - 6 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## DETENTION ORDER

Pursuant to 18 U.S.C. § 3142(f), on December 4, 2000, a hearing was held to determine whether the defendant Louis Petrillo should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of this defendant as required and/or the safety of any other person and the community. Therefore, it is hereby ordered that the defendant Louis Petrillo be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1. The defendant is charged with obstruction of justice, in violation of 18 U.S.C. § 1503.  18 U.S.C. § 3142(g)(1).

EXHIBIT 1

2.    The weight of the evidence against the defendant is substantial.    Government witnesses will testify that on March 21, 1995, the defendant was sentenced by Chief United States District Judge William J. Zloch to a prison term of 366 days for bank fraud, and five years probation for misapplication of bank funds.    The defendant was ordered to pay restitution in the amount of $1,983,000, which amount later was reduced to $83,160.    In October 1999, the defendant sought a further reduction in the restitution amount based on his inability to pay, and amount was reduced to $43,160.

On August 3, 2000, the defendant's probation officer, Frank X. Will, petitioned the Court for revocation of the defendant's probation on four grounds: (1) failure to submit documentation regarding nine trips outside the Southern District of Florida, which had been authorized for business purposes only; (2) failure to notify the Probation Officer of approximately $45,000 in cash that was found in the defendant's residence during the execution of a state search warrant; (3) failure to report to the Probation Officer that approximately $520,000 in checks, payable to the defendant, had been deposited in three bank accounts belonging to the defendant, and (4) failure to report the fact that approximately $2,348,984.88 in checks issued by the defendant's employer were either endorsed or deposited by the defendant in seven separate bank accounts.    According to the information the

2

defendant did provide to the Probation Officer, he was earning an income of $50,000 per year.

Judge Zloch authorized an arrest warrant for the defendant for violation of probation, after which the defendant was released on a $250,000 bond with a ten percent deposit into the registry of the court. Subsequently, the defendant's employer, Larry Pinkoff, advised Government agents that the defendant had threatened the life of his Probation Officer. A video and audio surveillance camera was installed in Mr. Pinkoff's office, by means of which agents observed and heard the defendant creating false and backdated credit documents to demonstrate that the funds mentioned in the petition for violation of probation were loans, not income. On November 27, 2000, the defendant's attorney presented these documents to the United States Attorney's Office to dissuade that office from prosecuting the defendant for violation of probation.

During the videotaped meetings between the defendant and Pinkoff, the defendant related that he had paid off a hotel manager to provide a false receipt on one of the trips referred to in the petition for violation of probation. He also referred to large sums of money that had been deposited in a bank account outside the United States, and impliedly threatened the safety of his Probation Officer. 18 U.S.C. § 3142(g)(2).

3.     The pertinent history and characteristics of the defendant are that he has strong ties to the community, but also has access to very large sums of money, some of which is in banks

3

outside the United States.   In addition, the defendant repeatedly
has demonstrated his utter disregard for the authority of
the Court,   as   summarized   in   paragraph 2 of this Order.
Accordingly, the defendant constitutes a risk of flight.  18 U.S.C.
§ 3142(g)(3)(A) and (B).

     4.   There is probable cause to believe the defendant has
made threats to the life and safety of his probation officer.
Accordingly, the defendant constitutes a danger to other persons.
18 U.S.C. § 3142(g)(4).

     5.   The Court specifically finds that there are no
conditions or combination of conditions which reasonably will
assure the defendant's appearance as required and/or the safety of
any other person and the community.   18 U.S.C. § 3142(e).

Based upon the above findings of fact, which were
supported by clear and convincing evidence, the Court has concluded
that this defendant presents a danger to other persons, and there
is a very substantial likelihood that he will flee if released on
bond.   The Court hereby directs:

(a)   That the defendant be committed to the custody
of the Attorney General for confinement in a corrections facility
separate, to the extent practical, from persons awaiting or serving
sentences or being held in custody pending appeal;

(b)   That the defendant be afforded reasonable
opportunity for private consultation with counsel; and

4

(c)    That, on order of a court of the United States

or on request of an attorney for the Government, the person in

charge of the corrections facility in which the defendant is

confined deliver the defendant to a United States Marshal for the

purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida, this 6th

day of December, 2000.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA Robert Lehner (MIA)
Pretrial Services (FTL)
Joseph Paglino, Esq.

5

CASE # _00-cR-6334-WDF_



# "Do Not Scan
# or Copy This
# Transcript."

DE # _17_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

THE UNITED STATES OF AMERICA, )
                              )         CASE NUMBER
            PLAINTIFF,         )         00-6334-CR-FERGUSON
                              )
      VS.                     )
                              )
LOUIS F. PETRILLO,            )         THIS VOLUME:
                              )         PAGES 1 - 48
            DEFENDANT.        )
_____)

(TRANSCRIPT BY TAPE)


        TRANSCRIPT OF PRETRIAL DETENTION HEARING HAD

BEFORE THE HONORABLE LURANA S. SNOW, IN FORT LAUDERDALE,

BROWARD COUNTY, FLORIDA, ON DECEMBER 4, 2000, IN THE

ABOVE-STYLED MATTER.



APPEARANCES:

FOR THE GOVERNMENT:    ROBERT LEHNER, A.U.S.A.

FOR THE DEFENDANT:     JOSEPH S. PAGLINO, ESQ.



                    CARL SCHANZLEH
             OFFICIAL COURT REPORTER
                  U. S. COURTHOUSE
            299 E. BROWARD BLVD., 202B
           FORT LAUDERDALE, FLORIDA 33301
                   954 769-5488

17

TRANSCRIPT

1

2                          **TABLE OF CONTENTS**

3   <u>WITNESSES</u>:                          <u>DIRECT</u>  <u>CROSS</u> <u>REDIRECT</u> <u>RECROSS</u>

4   LOUIS SELLARS ......................... 25

5                          <u>INDEX TO EXHIBITS</u>

6   <u>EXHIBITS</u>                          <u>MARKED FOR</u>           <u>RECEIVED</u>
                                      <u>IDENTIFICATION</u>      <u>IN EVIDENCE</u>

7   <u>DESCRIPTION</u>                        <u>PAGE</u>    <u>LINE</u>      <u>PAGE</u>    <u>LINE</u>

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# NOT

# SCANNED

## PLEASE REFER TO COURT FILE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO.** 6 3 3 4   CR-FERGUSON

18 U.S.C. §1503

MAGISTRATE JUDGE
SNOW

UNITED STATES OF AMERICA )
                         )
v.                       )
                         )
LOUIS F. PETRILLO,       )
                         )
          Defendant.     )
_____)

FILED BY

00 NOV 30  PH 2: 14

#### INDICTMENT

#### COUNT 1

From on or about October 26, 2000, through on or about November 27, 2000, at Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, defendant

#### LOUIS F. PETRILLO

corruptly endeavored to influence, obstruct, and impede the due administration of justice in <u>United States v. Louis F. Petrillo</u>, Case No. 93-442-CR-ZLOCH, in a Violation of Conditions of Probation judicial proceeding pending in the United States District Court, Southern District of Florida, by creating, and causing the creation of, false and fictitious documents, that is, a Promissory Note/Line of Credit and Line of Credit Draw Requests, in order to mislead the United States District Judge, who is presiding over the judicial

ATTACHMENT

EXHIBIT 3

proceeding referenced above, into believing that moneys and funds that had been received by defendant Louis F. Petrillo were loans rather than income.

All in violation of Title 18, United States Code, Section 1503.

A TRUE BILL

FOREPERSON

GUY A. LEWIS
UNITED STATES ATTORNEY

ROBERT J. LEHNER
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 93-442-CR-ZLOCH

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
v.                              )
                                )
LOUIS F. PETRILLO,              )
                                )
        Defendant.              )
_____/

## MOTION TO CONTINUE VIOLATION OF
CONDITION OF PROBATION HEARING

The United States of America, by and through its undersigned
Assistant United States Attorney, hereby moves that the Violation
of Conditions of Probation Hearing in the above-captioned case
scheduled for December 4, 2000, be continued, and states as
follows:

1.     On August 3, 2000, United States Probation Officer Frank
X. Will, who is assigned to supervise defendant Louis F. Petrillo
in the above-captioned case, submitted to the Court a Petition,
requesting that the Court authorize the arrest of defendant
Petrillo for violations of the conditions of probation, based,
inter alia, upon defendant Petrillo's failing to report to the
United States Probation Office large amounts of his income.

2.     On August 8, 2000, the Court ordered the issuance of an
arrest warrant based upon Probation Officer Will's petition.

3.     On August 16, 2000, defendant Petrillo was arrested on


EXHIBIT 4

violation of 18 U.S.C. §1503, involving the events described above. See attached Indictment in Case No. 00-6334-CR-FERGUSON.

8.    On December 1, 2000, defendant Petrillo was arrested upon an arrest warrant issued on November 30, 2000 by United States Magistrate Judge Stephen T. Brown upon the grand jury indictment.

9.    Ruben Oliva, Esq., has been informed that he will be a witness in the trial of the attached indictment.

10.    The United States Probation Office is in the process of amending the probation violation petition to include as a violation of probation the matter charged in the attached indictment. Accordingly, Ruben Oliva, Esq., will be a witness in the violation of probation hearing pending before the Court.

11.    In light of the events described above, it is hereby moved that the violation of probation hearing scheduled for December 4, 2000, be continued.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By:    ROBERT J. LEHNER
ASSISTANT UNITED STATES ATTORNEY
FLORIDA BAR NO. 0861669
99 N.E. 4th Street, 4th Floor
Miami, Florida 33132-2111
Tel. No.' (305) 961-9020
Fax No.  (305) 530-6168

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by mail this __1ST__ day of December, 2000 to Ruben Oliva, Esq., 2250 S.W. 3rd Avenue, Third Floor, Miami, Florida 33129.

Donald F. Chase II FOR
ROBERT J. LEHNER
ASSISTANT U.S. ATTORNEY