UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**NIGHT BOX**
**FILED**

| | |
|---|---|
| UNITED STATES OF AMERICA : | CASE NO. 00-6334 |
| Plaintiff, : | CR - FERGUSON |
| vs. : | |
| : | Fla. Bar No. 100028 |
| LOUIS FRANK PETRILLO, : | |
| : | Fla. Bar No. 525693 |
| Defendant. : | |

JAN 1 2 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## DEFENDANT PETRILLO'S 2nd MOTION TO SUPPRESS EVIDENCE
## PREDICATED UPON VIOLATION OF US CONST. 4TH & 5TH AMEND.

Defendant, Louis Frank Petrillo, by counsel, pursuant to Rule 12(b)(3), Fed.R.Crim.P.; U.S.Const. Amend(s). 4th & 5th, moves to suppress the following evidence intended to be used against the Defendant, *sub judice*, because the evidence was obtained in violation of Defendant's 4th and 5th Amendment, US Const. rights.

1. Promissory Note, Medipre Letter and other Documents created or caused to be created, in whole or part, by Government Agent Pinkoff
2. Audio-Video Tapes of Interview of Defendant Petrillo by Government Agent Pinkoff, made on October 19, 2000 and October 26, 2000, under supervision of various other Government Agents.
3. Statements of Defendant Petrillo made on October 19, 2000 and October 26, 2000 to Government Agent Pinkoff
4. All other statements made to Government Agent Pinkoff by Defendant Petrillo during the time Pinkoff was a Government Agent
5. Such other evidence and documents which were derived from Defendant Petrillo's interviews by Government Agent Pinkoff
6. A box of undifferentiated, un-indexed documents, copies of which were obtained by the Defense from the United State's copying contractor at the direction of AUSA Robert Lehner.

Note:  The United States still declines to give Notice of the evidence it intends to use at trial [Defendant requested Rule 12(d)(2) evidence disclosure]] or comply with the Court's Order requiring it to give to the Defense, on January 8, 2001, a list of documents and witnesses it intends to use at trial; Defendant anticipates that the foregoing evidence will be sought to be introduced at trial by the United States and files this Motion. Defendant previously filed a Motion to Suppress based on U.S.Const..6th Amend. violations by the United States, which remains pending.

## **MEMORANDUM OF LAW IN SUPPORT OF MOTION**

### I

### **ISSUES FOR DECISION**

#### Issue No. 1

**Were Statements And Other Evidence Obtained From Defendant Petrillo In Violation Of His Rights To Be Free From Illegal Searches and Seizures Under U.S. Const. Amend. 4th**

#### Issue No. 2

**Were Statements And Other Evidence Obtained From Defendant Petrillo In Violation Of His Right To Be advised Of His Right To Remain Silent And To Have Counsel Present Obtained In Violation Of Defendant's U.S.Const. Amend. 5th Rights When He Was Interviewed By an Undisclosed Government Agent**

### II

### **STATEMENT OF THE CASE**

Defendant, Louis Frank Petrillo, is charged with violation of 18 USC 1503 [obstruction of Justice] for allegedly causing a false (*sic*) promissory note to be created which he endeavored to use in a probation violation hearing. Docket # 3. The basis for the Defendant's Indictment and arrest are two (2) surreptitious Audi-Video-Tapes made, respectively, on October 19, 2000 and October 26,

2000, which were initiated and participated in by Government Agents Lawrence Pinkoff [Cooperating, Immunized, Confidential Government Informant], Jeffrey Jones [FBI Agent], Robert Lehner, USA and other, yet undisclosed, government agents.

The case was initially set for trial on the January 16, 2000 trial calendar before Judge Ferguson, Docket # ___ but, due to a Motion To Transfer To Judge Zloch's division filed by the Government, the case was not scheduled. Petrillo is currently in custody. Docket # 16.

## III

## STATEMENT OF THE FACTS

At all material times, Defendant Petrillo was on Supervised Release, with approximately three (3) months remaining on a five (5) year federal probation for a bank fraud conviction and was released on Surety Bond for an alleged violation of condition(s) of the federal probation based on the petition of his Probation Officer, Frank Will. *See United States vs. Petrillo*, Case No.93-442-CR-Zloch. At all times material, Petrillo was represented by legal counsel, i e., Ruben Oliva, Esq. and Walter Reynoso, Esq.; The fact that he was represented by these specific legal counsel was known, at all material times, by all government Agents involved in his federal case(s).

The initial audio-visual taping, done on October 19, 2000, was allegedly undertaken because the Confidential Informant, Pinkoff, an undisclosed government agent and Petrillo's employer, had told another government agent, Louis Sellars, that Petrillo had, in the past, once threatened the life of Frank Will, Petrillo's Probation Officer. Docket # 17 [Transcript of Petrillo's Bond Hearing]. Agent Sellars testified, at Petrillo's Bond Hearing, that Agent Pinkoff had told him this [ at an undisclosed time and place]. Docket # 17

Agent Pinkoff apparently has no history of reliability as a confidential informant/Agent and

Page 3 of 15

appears to have been given statutory, use and "pocket" immunity for various IRS Fraud, Money Laundering, Medicaid-Medicare Fraud, and other federal offenses, in the Southern District of Florida and one or more Districts in Georgia. Docket # 17, # 26. He was apparently given full statutory and "pocket" immunity from prosecution for his known crimes, as a *quid pro quo* for his allegation that Petrillo had made a threat against his Probation Officer. Docket #17, #26. Agent Pinkoff was represented in his immunity discussions, etc., by Broad & Cassell, a local law firm and other, yet identified persons. AUSA Robert Lehner was involved in the immunity and taping decisions; is the prosecutor, *sub judice*, presented Petrillo's Obstruction of Justice case to the Grand Jury, is the AUSA prosecuting Petrillo's Violation of Condition charge and an expected witness in the case. Docket # 17, # 19, # 22, # 26.

The government's taped interview of Petrillo on October 19, 2000, did not produce any evidence of any threat by Petrillo on the life of his Probation Officer. Tr. 10-19-2000. Nevertheless, the Government Agents, using Agent Pinkoff, set up another taped interview for October 26, 2000 which, also, did not produce any evidence of any threat by Petrillo on the life of his Probation Officer. Tr. 10-26-2000. At no time did the Government Agents seek to obtain an Order from any Court for the taped interviews. Docket #1 - end. The entire legal justification of the Government for the taped interviews and the use of evidence learned of during the interviews in pending or future criminal prosecutions of the Defendant, Petrillo, appears to be that Government Agent Pinkoff consented to the taped interviews, making them "consensual"; and, Pinkoff's uncorroborated allegation that, at some time in the past, Petrillo had threatened his Probation Officer's life. (*Sic*). It is entirely on the basis of the illegally obtained evidence that Petrillo was arrested and Indicted. Absent the illegally seized evidence, no evidence exists upon which Petrillo can be convicted.

At the initial taped interview, Agent Pinkoff suggested that a "Note" be prepared. However, no "Note" was prepared or requested to be prepared by Petrillo. At the next taped interview with Agent Pinkoff, on October 26, 2000, the "Note" matter was again discussed and Agent Pinkoff, drafted a "Note", from a form on his computer, all with the government's knowledge. But for the October 19, 2000 interview, at Agent Pinkoff's initiative, the "Note" issue would not have arisen. It is the "Note" initiated by Agent Pinkoff at the October 19, 2000 taped interview, which Agent Pinkoff later prepared at his October 26, 2000 taped interview with Petrillo, that forms the basis of the Indictment of Petrillo for Obstruction of Justice..

At all times material hereto, prior to and during the audio-visual tapings/interview by Agent Pinkoff, Petrillo was represented by legal counsel, i.e., Ruben Oliva, Esq. and this was known to all Government Agents involved in setting up the taped interviews, conducting the taped interviews themselves and their aftermath. Docket # 17, # 19, # 22 and this should not be disputed by the Government Agents.

At no time did any Government Agent or the AUSA's involved in the taped interview(s) of Petrillo, disclose to Petrillo or his legal counsel, that he was to be interviewed by Government Agent Pinkoff, or that [at least] two (2) of the interviews by Government Agent would be audio-video taped.

## IV

## SUMMARY OF ARGUMENT

### (a)

### As To The Government's 4th Amendment Violations

Because there was no reasonable, reliable, probable cause to suspect Petrillo had threatened

to harm his Probation Officer, the October 19, 2000 taped interview of Petrillo by Government Agent Pinkoff, should not have been permitted, without an Order from a neutral Magistrate Judge or District Court Judge. Because no neutral Magistrate Judge or District Court Judge was asked for or issued an Order permitting the taped interview by Agent Pinkoff, the taped interview was conducted in violation of Petrillo's 4th Amendment rights and all evidence obtained by the taped interview, or arising therefrom should be suppressed. United States v. Calandra, 414 U.S. 338, 348 (1974). *See also* Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To avoid "rigid" legal rules, Gates changed the "two-pronged test" of Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), into a "totality of the circumstances test". Both prongs of the "test" fail, *sub judice*. See Gates, 462 U.S. at 230-35, 103 S.Ct. 2317, U.S. Const. Amend. 4th.

For these reasons, the illegally obtained evidence against Petrillo should be suppressed since it was obtained in violation of his 4th Amendment right to be free from unreasonable searches and seizures.

**(B)**

## As To The Government's 5th Amendment Violations

Based on the undisputed facts, Defendant Petrillo's interviews by Government Agent Pinkoff violated Petrillo's US Const. 5th Amend. "Miranda" rights and all evidence obtained from the interviews with Agent Pinkoff should be suppressed and not be used against him in this or any criminal prosecution. It is settled that a person in custody must be advised of his right to remain silent and his right to counsel prior to any interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1965). In *Minnesota v. Murphy*, 465 U.S. 420, 430, reh'g denied, 466 U.S. 956 (1984) the Supreme Court held that a person on Supervised Release was "in custody" for 5th Amendment purposes. Here too,

Petrillo was also on surety bond release, further restricting his freedom. And, all Agents involved knew Petrillo had requested and was, in fact, represented by legal counsel, at all times material hereto.

Here, also, despite their knowledge that Petrillo had invoked his right to counsel and hired counsel, the government agent(s) also took further, impermissible, action, by creating a promissory note on a government controlled computer, by Agent Pinkoff, who actually typed the note on the computer from a form placed in the computer for that purpose, which evidence was manufactured under the direction of the government agent(s) knowing they intended to create and use it as evidence against the Defendant to obtain an Indictment and at trial. This affirmative, government "action", went far beyond merely interviewing the Defendant and was a deliberate, successful; videotaped attempt to affirmatively elicit incriminating documents, statements, actions and the manufacture of physical evidence to be used against the Defendant. This is, of course, impermissible under 5th Amendment protections. *United States v. Henry*, 447 U.S. 264,267,100 S.Ct. 2183, 2186-87, 65 L.Ed.2d 115 (1980), *Light bourne v. Dagger*, 829 F.2d 1012, 1020 (11th Cir. 1987)

Because the evidence obtained from the Defendant was obtained in knowing violation of his "Miranda" rights, it should be suppressed and not used against him at trial or otherwise.

## V

## ARGUMENT

### (a)

### The 4th Amendment Violation(s)

Because there was no reasonable, reliable, probable cause to suspect Petrillo had threatened to harm his Probation Officer, the October 19 and 26, 2000 taped interviews of Petrillo by Government Agent Pinkoff, should not have been permitted, without an Order from a neutral Magistrate Judge or District Court Judge. Because no neutral Magistrate Judge or District Court

Page 7 of 15

Judge was asked for or issued an Order permitting the taped interviews by Agent Pinkoff, the taped interviews were conducted in violation of Petrillo's 4th Amendment rights and all evidence obtained by the taped interview, or arising therefrom should be suppressed. United States v. Calandra, 414 U.S. 338, 348 (1974).

Here, Confidential Agent Pinkoff "traded" his suspect allegation that, at some time in the past, his employee, Petrillo, had threatened to kill his Probation Officer, for extremely far ranging immunity for serious criminal activity, including federal tax fraud, money laundering, medicaid fraud and an eclectic variety of other offenses.

Here, the far reaching *quid pro quo* of extremely substantial direct, derivative and "pocket" immunity for criminal conduct granted to Agent Pinkoff, was traded only for Agent Pinkoff's alleged representation that Petrillo had made a believable or "serious" threat to kill (*sic*) his Probation Officer. This uneven trade alone, makes his statement inherently unreliable to any neutral, disinterested Magistrate, Government Agent, attorney or layman.

As a minimum, there was no reason for the Government to give him such far ranging immunity for information he ... and his attorneys ... would be required, by law, to disclose. And, in any case, Agent Pinkoff should have been taken before a neutral Magistrate to test his allegation, prior to his being given the extra-ordinary *quid pro quo* of extensive immunity for an eclectic variety of serious federal offenses ...and to determine probable cause for any taped interviews with Petrillo. *Infra.*

Probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts[.]" Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To avoid "rigid" legal rules, Gates changed the "two-pronged test" of Aguilar v. Texas, 378 U.S. 108,

Page 8 of 15

114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), into a "totality of the circumstances test". See Gates, 462 U.S. at 230-35, 103 S.Ct. 2317. Under the Gates totality of the circumstances test, the "veracity" and "basis of knowledge" prongs [of Aguilar], for assessing the usefulness of an informant's tips, are not independent. "[T]hey are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for ... by a strong showing as to the other[.]" Id. at 233, 103 S.Ct. 2317. Here, neither prong of sufficient probable cause for the taped interviews are demonstrated.

And here, the Confidential Informant/Agent Pinkoff, apparently had not provided information to law enforcement of this nature and it was not known if his information was "truthful and reliable" on each or any occasion.   Certainly, in this case his information was, indeed, facially suspect, sparse and inherently unreliable ...especially since Petrillo's five (5) year probation ended in February of 2001, a few weeks hence and he had never before been violated for any condition of his probation, has absolutely no history of violence and has only a bank fraud conviction.

In addition, the absence of details as to the alleged threat, means of carrying it out, motives for doing the act, etc., are conspicuously absent. And, it was extremely likely that Agent Pinkoff would be untruthful ... merely trading off an inherently unreliable statement to give the United States a reason it wanted ... to surreptitiously interview Petrillo for their purposes ... in the absence of his legal counsel and without providing required Miranda warnings. Or, perhaps, as a reason to support their extensive immunization of their Agent, Pinkoff.

The purported reliance by the Government on Agent Pinkoff's representation is suspect too, for the reason that there is evidence here that, if the Government did not have sufficient reason to immunize Pinkoff, he was merely creating a reason, to dupe the government with his "trade off"

of substantial immunity for his unreliable "tip". Certainly, there is an absence of any indicia that previous "tips", if any, to law enforcement officials, by Pinkoff ... if any ... were important or incidental to other investigations, or whether Pinkoff's previous "tips", if any, resulted in any search, arrest, or conviction. See United States v. Miller, 753 F.2d 1475, 1480 (9th Cir 1985). In fact, the Record, *sub judice*, is barren of any such government knowledge or disclosure, as to Pinkoff.

And, of course, any averment that the CI, Pinkoff, has provided reliable information in the past, without more, would merely be a bald assertion that the government considered him to be ...or that he was or is ... a "reliable informant," because it still "leaves the nature of any [past] performance undisclosed, so that a judicial officer making the probable cause determination on a later Motion To Suppress, has no basis for judging whether the characterization of [the CI's past] performance is justified" The neutral magistrate is still relegated to merely relying on Confidential Agent Pinkoff's reliability judgment, which would accord it only the slightest weight, if any *Miller, supra*, 753 F.2d at 1480. For these reasons, Petrillo's 4th Amendment rights were violated and the evidence obtained by the October 19, 2000 and October 26, 2000 interviews by Agent Pinkoff, should be suppressed.

#### (b)

#### The 5th Amendment Violations

On October 19, 2000 and October 26, 2000 and other times still undisclosed by the United States, all after Defendant Petrillo had requested legal counsel and retained legal counsel, Defendant Petrillo was set up by Government Agents and one or more Assistant United States Attorneys, to be interrogated and give statements which could be used against him and from which evidence to be used against him could be derived; and in which the United States could cause physical evidence to be affirmatively created, by a Government Agent, Pinkoff, to be used against the Defendant. This

was accomplished under the control and direction of FBI Agent Jeffrey Jones, Federal Agent Louis Sellars, AUSA Robert Lehner and Government Agent Lawrence Pinkoff, an immunized, [but purposely and knowingly, undisclosed to Petrillo] government agent. *See factual Proffer of Robert Lehner, AUSA in Transcript of Bond Hearing, Docket # 17, sub judice.* Defendant Petrillo was, at all times, on supervised release, on Surety Bond and awaiting trial on a Probation Violation Hearing. *See Minnesota v. Murphy,* 465 U.S. 420,430, reh'g denied, 466 U.S. 956 (1984), holding that in such conditions, a person is "in custody and 5th Amendment protections apply and are available to such persons.

It is settled that a person in custody must be advised of his right to remain silent and his right to counsel prior to any interrogation. *Miranda v. Arizona,* 384 U.S. 436 (1965), *Minnesota v. Murphy,* 465 U.S. 420,430, reh'g denied, 466 U.S. 956 (1984). [Persons, like Petrillo, on Supervised Release entitled to 5th Amendment protections] Here too, the United States maintains that it was investigating a "new crime", but this would not assist them in avoiding 5th or 6th Amendment preclusions. *Maine v. Moulton,* 106 S.Ct At 477, 489 (1985). *See also, Jones v. Cunningham,* 371 U.S. 236, 240-43, 83 S.Ct. 373, 376-377, 9 L.Ed.2d 285 (1963) [holding that a paroled prisoner is "in custody" when there are restrictions placed upon him that are not placed on the general public]; *United States v. Essig,* 10 F.3d 968, 970 n.3 (3rd Cir. 1993) [holding that supervised Release satisfies the "in custody" requirement of Section 2255]

Here, too, the government agent(s) also took further action, by creating a promissory note on a government controlled computer, by Agent Pinkoff, who actually typed the note on a computer, and which evidence was manufactured under the direction of the government agent(s) knowing they intended to use it as evidence against the Defendant. This "action" went far beyond "merely listening to the Defendant" and was a deliberate, successful, videotaped attempt to affirmatively elicit incriminating statements, actions and the manufacture of physical evidence to be used against the Defendant. This is, of course, impermissible. *United*

Page 11 of 15

*States v. Henry,* 447 U.S. 264,267,100 S.Ct. 2183, 2186-87, 65 L.Ed.2d 115 (1980), *Lightbourne v. Dagger,* 829 F.2d 1012, 1020 (11th Cir. 1987)

It would appear the Fifth Amendment Privilege Against Self-Incrimination is available to Defendant Petrillo since he was in "custody" and had not only requested assistance of counsel, for his pending criminal case(s)and pending criminal investigations against him, but had actually retained counsel to represent him in those matters, proving, undisputedly, that he had invoked his right to counsel. And, it is undisputed that all Government Agents involved in Petrillo's taped interview(s) [with an undisclosed Government Agent] were fully aware that Petrillo was represented by legal counsel. *Minnesota v. Murphy, supra,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).

Certainly, Petrillo had a reasonable fear of prosecution, both for his probation violation and other matters for which he was being investigated by the United States and certain pending state matters, which is why he had invoked his right to counsel...actually retaining counsel. His premonitions proved correct, but his invocation of right to counsel and retainer of counsel were, apparently, of no importance to the Government or to him, despite *Miranda, supra.*

Despite the Governments actions, the Fifth [and Sixth] Amendment protections afforded to persons in Petrillo's position are apparent. It is obvious and logical that had the United States disclosed to Petrillo or his attorney(s) that Pinkoff was, in reality, acting as an Agent of the United States, or advised his legal counsel that Pinkoff was an Agent of the United States ... Petrillo would have invoked his right to remain silent when interviewed by Pinkoff ...or, at least ... to have his legal counsel present. The failure to disclose to Petrillo and/or his legal counsel ... that Pinkoff was an Agent for the United States, requires suppression of the Audio-Video Tapes and all evidence arising from the information obtained in the tapings, because;.

The Fifth Amendment provides in part: "No person ... shall be compelled in any criminal case

Page 12 of 15

to be a witness against himself...." U.S. Const. amend. V.[5] The right against self-incrimination extends to any compelled testimony which may be used directly against the witness in a subsequent criminal prosecution or any compelled testimony which may lead to discovery of any evidence later used against him in a criminal prosecution. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); see also Malloy v. Hogan, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964) ("Governments, state and federal, are thus constitutionally compelled to establish guilt by evidence independently and freely secured and may not by coercion prove a charge against an accused out of his own mouth."). "[The privilege] can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory...." Kastigar v. United States, 406 U.S. 441, 444-45, 453, 92 S.Ct. 1653, 1656, 1661, 32 L.Ed.2d 212 (1972) (holding that grant of immunity from use and derivative use is sufficient to supplant the privilege because no criminal prosecution could then be feared).

The witness may invoke the privilege if he reasonably believes that the information sought could lead to criminal prosecution of him. Id., 406 U.S. at 444-45, 92 S.Ct. at 1656. This belief cannot be speculative or the product of mere conjecture; it must be supported by reason or cause. Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968) ("The central standard for the privilege's application has been whether the claimant is confronted by substantial and "real,' and not merely trifling or imaginary, hazards of incrimination."); Hoffman, 341 U.S. at 486, 71 S.Ct. at 818 (holding that the privilege applies when ... as is apparent in Petrillo's case .... a witness has "reasonable cause to apprehend danger from a direct answer"); United States v. Cuthel, 903 F.2d 1381, 1384 (11th Cir.1990) ("A witness may properly invoke the privilege when he "reasonably apprehends a risk of self- incrimination, ... though no criminal charges are pending against

him ... and even if the risk of prosecution is remote.' " (quoting In re Corrugated Container Anti-Trust Litigation, 620 F.2d 1086, 1091.

In Davis v. United States, 114 S.Ct. 2350, 2352, 129 L.Ed.2d 362 (1994), the Court considered how law enforcement officials should react when a suspect has previously requested counsel 'in a manner insufficiently clear' to invoke the prohibition on additional questioning. Here... of course ...it is undisputed that Petrillo had not only requested counsel, but had reinforced and verified his desire, by actually retaining counsel ... and all Government Agents involved knew this.. Thus, it is undisputed that the United States and all Agents involved, knew that Petrillo had not only "articulated his desire for legal counsel"... he had reinforced his position by retaining legal counsel.

In *Davis, supra*, the Supreme Court held that when a suspect unambiguously requests counsel he can not be questioned further. Because all Agents involved knew Petrillo had already hired an attorney, it is reasonable to conclude that Petrillo "had unambiguously and unequivocally evidenced his desire to be represented by counsel and should not have been questioned by Agent Pinkoff.

The Supreme Court also established in Edwards, 451 U.S. at 484-85, 101 S.Ct at 1884-85, that once a defendant requests counsel, questioning must immediately cease and any further communications without counsel, unless "knowingly" reinitiated by the defendant, will be inadmissible, as being in violation of the suspects *Miranda* rights. Here, the clear and knowing violation of Petrillo's *Miranda and Edward* rights, ***inter alia,*** renders his initial, October 19, 2000 taped interview inadmissible and his later, October 26, 2000 taped interview inadmissible ... and all evidence derived from either interview. The taped evidence and all evidence arising from the taped evidence, should be suppressed.

VI

## CONCLUSION

For the foregoing reasons, all evidence derived from the United States Agents taped interviews of Defendant Petrillo should be suppressed and no permitted as evidence against him in this proceeding. *[Note: Defendant has also filed a Motion To Suppress based upon the United States's violation of his 6th Amendment Right to Counsel]*

VII

## CERTIFICATE OF GOOD FAITH

Undersigned counsel have heretofore discussed the evidentiary matters with the government/AUSA and have been unable to resolve these issues, hence Defendant's Motion(s) To Suppress and Motions In Limini

IX

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by United States Mail this ___ day of January, 2001 to Robert J. Lehnar, A.U.S.A., 99 N.E. 4th Street, 4th Floor, Miami, Florida 33132-2111.

Respectfully submitted:

Law Office of Joseph S. Paglino
Lead counsel for Defendant
12865 West Dixie Highway
North Miami, Florida 33161
Tel. (305) 758-8017

Law Office of Walter A. Reynoso, P.A.
Co-counsel for Defendant
Grove Forest Plaza, Suite 107
2937 Southwest 27th Avenue
Miami, Florida 33133
Tel. (305) 642-8961

By_____
Joseph S. Paglino, Esq.