UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | : | CASE NO. 00-6334 |
| --- | --- | --- |
| Plaintiff, | : | CR - FERGUSON |
| vs. | : | |
| | : | Fla. Bar No. 100028 |
| LOUIS FRANK PETRILLO, : | | |
| | : | Fla. Bar No. 525693 |
| Defendant. | : | |



### DEFENDANT'S REPLY TO THE GOVERNMENT'S OMNIBUS RESPONSE TO MOTIONS FILED BY DEFENDANT

Defendant, Louis Frank Petrillo, by counsel, Replies to the Government's Omnibus Response to the various Motions filed by the Defendant and says:

The Government's Omnibus Reply was filed January 11, 2001. **DE 41** Inadvertently, no copies were served contemporaneously on any Defense Counsel, however, upon review of the Docket on January 18, 2001, the filing was noted and a copy obtained from the Court File. The Defense, respectfully, disagrees with certain positions taken on most of the United State's Response. Hence, the Defense replies, *seriatim:*

### I. Defendant's Demand For Exculpatory Materials: DE 25, DE 40

The Defense has requested both general and specific "Brady" materials. Certain specific "Brady" materials are requested, by Motion, DE 25, which are not available to Defendant and are in the control and custody of the Government, by its immunized Agent, Lawrence Pinkoff and his related companies. The Government, *sub judice*, takes the position that certain checks given to the Defendant by a company controlled by Government Agent Pinkoff indicated personal income to the Defendant, as opposed to loans. The Defense requested production of the W-2 or 1099 forms filed as to the particular income alleged by the Government, which support the government's position, W-2 or 1099 forms for the other company employees or records showing that no W-2 or 1099 forms were filed for the monies in issue for the pertinent years. The United

Page 1 of 12

States controls Agent Pinkoff and the records in question. Thus far, the government declines to provide the "Brady" materials. If no W-2 or 1099 forms were filed with the IRS, as to the monies in issue, this is exculpatory to the Defense.

Although the Government declines to supply the Brady materials, it does not deny that the materials exist and are available, under the government's control [by its Agent] and exculpatory to the Defendant.

### II.    Defendant's Request For Written Summaries of Testimony The Government Expects to Offer At Trial Under Rules 702, 703 or 705, Fed.R.Evid.  DE 33

The United States responds that it does not intend to use any "expert witnesses" or summaries, etc. at trial and is therefore unable to provide 702, 703 or 705 materials. Since the Government represents it will not use any expert witnesses or testimony, reports, etc., its Response is sufficient and Defendant will rely on the Government's representation.

### III.    Defendant's Motion To Redact Indictment.  DE 30

The Indictment charges Defendant with endeavoring to obstruct justice ...in a *"violation of Conditions of Probation judicial proceeding..."*. The Defense seeks to redact the Indictment to remove the words *"violation of probation"*. so the charge in the Indictment reads: the Defendant endeavored to obstruct justice...*in a judicial proceeding.*.  This is because the inclusion of the words .." *Violation of Condition of Probation"* informs the Jury of "other crimes" by the Defendant, since an allegation that the Defendant has violated his condition of probation indicates prior criminal conduct by the Defendant ... and ...assumes that the Defendant has, in fact, violated conditions of his probation, which is neither determined nor relevant to an 18 USC 1503 charge of "endeavoring to obstruct justice".

### IV & V.   Defendant's Motion(s) To Suppress And Exclude Evidence.   DE 31, DE 32, DE 45

The 1st motion is based on inaudible portions of audio-video tapes made October 19, 2000 and October 26, 2000, of the Government's [illegal] interviews with the Defendant. The Government has now provided a "redacted" transcript of the tapes and they are being reviewed by the Defense. If they can be reconciled with the recordings, the Transcripts may be amended to reflect the Government interviews.

The Defendant's 2nd Motion To Suppress and Exclude Evidence for 6th Amendment violations **DE 31**, is based, *inter alia*, on *Maine v. Moulton*, 106 S.Ct. 477 (1985), since the Government and specific Government Agents involved, arranged for Government Agent Pinkoff to interview the Defendant on various occasions, including October 19, 2000 and October 26, 2000, times when, it is undisputed, all Government Agents involved knew Defendant was represented by legal counsel ... and did not advise the Defendant's legal counsel of the interview or advise Defendant of his *Miranda* rights. Also, the Government Agent, Pinkoff, used the illegal interviews to initiate and create documents from prepared "forms" on a government controlled computer, on October 26, 2000, upon which documents the Government bases its "obstruction of justice" case. The Government-prepared documents were also probably used to Indict the Defendant for violation of 18 USC 1503. The tapes of the illegal interview(s) show, without question, that the interview(s) were contrived solely to obtain evidence and statements from the Defendant to use in pending investigations/proceedings in which the Agents involved knew Defendant was represented by counsel.

The Government's position as to their violation of Defendant's 6th Amendment Rights.

(1) The Government's first position against suppression appears to be that, while in most cases, a Defendant's legal counsel must be advised prior to any interview by a Government Agent, there is an exception, to wit, that a Defendant's legal counsel does not have to be advised that a Government Agent is the person interviewing a Defendant ...*if the Government agent consents to the interview and taping*... since the Agent's "consent" overrides *Miranda* and the Defendant's 6th Amend. right to have counsel present at Post-Arrest

interviews by Government Agents. To date, the Government has not cited any authority for this proposition and the Government's position appears to conflict with *Moulton, Miranda, Edwards* and all other precedent on this issue.

(2) The Governments 2nd argument against suppression on 6th Amendment grounds is that there is an exception to *Moulton*, that:

> "...Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached are, of course, admissible at a trial of those offenses..."

The trouble with the Government's reliance on the 'new crimes' exception is two-fold;

(a) Initially, the Government based its surveillance upon an uncorroborated statement from it's Agent Pinkoff, that at some point in the past, the Defendant had stated that he would like to kill his probation officer. *See Transcript of Bond Hearing DE 17*, which is the "new crime" it purports to have been investigating, "to which no right to counsel had attached." There is, as expected, absolutely no reference on the surveillance tapes to any threat to kill a probation officer, or anyone else, by Defendant or the Government Agent. The Tapes deal only with matters in which, the Defendant was ...at all times material ...represented by counsel. And, Defendant has not been indicted or even accused formally, of threatening to kill a probation officer.

*NOTE:* [It should be noted, that since the Government concedes that the exception it perceives in *Moulton, supra,* applies only to 'new crimes', to which the right of counsel has not attached ...the Government also, necessarily, concedes that it can not use the tapes, statements or any evidence arising therefrom .... in the Defendant's pending Violation of Probation Conditions Hearing, *Case No. 93-442-CR-Zloch,* for it is beyond argument that the Defendant was, at all times material, represented by counsel in the probation proceeding, by Ruben Oliva, Esq., the same attorney which the Government seeks to disqualify as Defendant's counsel in the Probation Violation case pending before Judge Zloch; and Walter Reynoso, Esq. It is assumed that, at some point, the Government will concede this point formally, but it has not yet done so.]

(b) The other difficulty with the Government's position on the 'new crime' exception, is that the Government has already conceded, in this record, that the 18 USC 1503 charge in this case was not a 'new

Page 4 of 12

crime`, but was based upon the same predicate acts as the Probation Violation case pending before Judge Zloch. This is shown in the Government's Motion To Transfer **DE 19**, in which the Government states:

> ` 7. Thus, it is apparent that Case No. 00-6334-Cr-Ferguson "involves subject matter which is a material part of the subject matter of another action or proceeding then before this Court, "to wit, Case No. 93-422-Cr-Zloch, and therefore, under Local Rule 3.9C, Case No. 00-6334-Cr-Ferguson should "be transferred to the Judge to whom the earlier filed action or proceeding is assigned," that is, Judge Zloch.
>
> 8. ... Thus, the evidence of obstruction of justice to be decided by Judge Zloch in the violation of probation hearing would be identical to the evidence of of obstruction of justice to be presented at the trial of Case No. 00-6334-Cr-Ferguson...'

The Government also concedes, in its Motion To Transfer, **DE 19**, at Para. 9, that the Defendant was represented by counsel at all times material:

> `9. The undersigned Assistant United States Attorney has contacted Ruben Oliva and Walter A. Reynoso, attorneys for Defendant Petrillo In Case No. 93-442-CR-ZLOCH.....' [As to their position on the Motion To Transfer]

Thus, it would appear un-controverted that *Moulton, supra,* and its progency, require suppression of all evidence, statements, tapes, etc., obtained in violation of the Defendant's 6th Amendment right to counsel, and, if not granted, Defendant is entitled to evidentiary hearing on these motions.

The Defendant's 3rd Motion to Suppress and Exclude is based upon 4th and 5th Amendment violations, **DE 45,** since there was no probable cause to initiate the tapings to obtain the evidence created and obtained at the Government's interviews of the Defendant; and because the Defendant was not advised of his right to remain silent at such questioning ...or request counsel, although it is undisputed he had requested...and retained counsel after his arrest.. *Nor did Agent Pinkoff disclose that he was a Government Agent.* And, at all times

Page 5 of 12

material hereto, the Government Agents involved knew that Defendant had requested legal counsel and had, in fact, retained specific legal counsel [Ruben Oliva, Esq. and Walter Reynoso, Esq.] to represent him.   The Defense believes the 4th, 5th, and 6th Amendment Motions are well taken and should result in suppression of all statements, audio-visual tapes and documents.

The Government's position. The Government's position that *Miranda* is "suspended" when an undisclosed government agent give his consent to tape his interviews with a Defendant who has prior thereto, requested counsel ... and, in fact, hired counsel...is not a viable argument.  Nor does the Government, in any paper filed herein, cite to any authority for its unique proposition   Even assuming, *arguendo*, the Government can come up with some Supreme Court authority which overrules *Moulton, supra*. which is unlikely, the 5th Amendment protections afforded Defendants by *Miranda* and its progency requires suppression of the tapes, statements and documents obtained by Government Agent Pinkoff, in violation of Defendant Petrillo's *Miranda* rights.

In sum, the Defense has three (3) Motions To Suppress pending   (1) because the tapes are inaudible, *supra*. which may be resolved by the parties, **DE 31,** (2) because the Government interviews of the Defendant were conducted in violation of his 4th and 5th Amendment rights, **DE 45,** and (3) because the Government interviews were conducted in violation of his 6th Amendment rights.   **DE 32**   The Defense has requested Hearings on the motions. if the Court elects not to Grant them without Hearing. *Infra*. and appears entitled to evidentiary Hearing.   *United States v. Harris*, 908 F.2d 728, 733 (11th Cir. 1990)

### VI.   Defendant's Motion In Limini To Exclude Testimony Of Ruben Oliva, Esquire, An Attorney For Defendant.  DE 33

The Government has stated it will call Ruben Oliva, Esq., the Defendant's attorney as a witness .. [the same attorney whom the Government did not advise of the Government's Agent's interviews of the Defendant and the Government Agent's creation of documents on the Government controlled computer, *supra* ].   The Government states Defendant's attorney will be a witness as to [unidentified] conversations with his client ...

*concerning the back-dated, false and fictitious documents that Mr. Oliva presented to the Government on behalf of his client...* **(sic)**. [ It is assumed the Government refers to the documents created by its Agent, Lawrence Pinkoff, but it is not entirely clear if this is the case or other documents are in play].

For this reason, *supra,* the Government sought disqualification of the attorney for "conflict" and by its allegation, precluded him from representing the Defendant in the case, *sub judice* ... and precluded him from continuing to actively represent the Defendant, as Defendant's legal counsel of choice, in other proceedings instituted by the Government. The government relies on the "crime-fraud" exception (sic),, in support of its attempt to call Ruben Oliva, Esq. as a witness, but will not proffer what specific testimony it expects to elicit from Ruben Oliva, Esq.. In short, the Government says:

> 9. It is axiomatic that when a defendant uses his attorney *(sic)* to present false and fictitious evidence *(sic)* the crime-fraud exception to the attorney-client privilege applies and the attorney may be subpoenaed to give testimony of his conversations with his client, which otherwise would be shielded by the attorney-client privilege...." *(Sic)* **DE 28**

However, the Government offers no specifics or even proffered facts as to what, if anything Ruben Olive, Esq did or evidence of any conversations with his client, the Defendant, if any, concerning the document(s) in issue. Respectfully, the Government would have to make a much more sufficient showing than it has to date, to even approach the level required for inquiry into the attorney-client relationship.

### VII. Defendant's Motion For Notice And Production of Rule 404(b) Evidence And Proffers.

**DE 34** The Government claims this Defense Motion is moot, since it does not intend to introduce any Rule 404(b) materials at trial; but the Government declines to agree to redact the indictment, in which the Government, by AUSA Lehnar, includes a statement as to "prior" crimes of the Defendant, by referring to a "Violation of Condition of Probation", which concludes the Defendant was convicted of prior criminal acts.

### VIII. Defendant's Motion For Order In Limine As To The Use Of Rule 404(b) Evidence.

**DE 34** The Government's response that no Rule 404(b) evidence will be presented at trial moots this issue, other than as to the redaction of the Indictment, which is an involved issue, i.e., prior crimes.

### IX. Defendant's Motion In Limini To Preclude The Use of Any Evidence The United States Planned or Schemed To Obtain From Defendant's Attorney, Ruben Oliva. DE 33-1

Defendant agrees that this issue is similar to and may be resolved by Defendant's Motion In Limini as to his attorney, Ruben Oliva, except as to the suppression of any documents the government claims it obtained from Ruben Oliva, Esq. or anyone working under his attorney-client relationship with Defendant.

### X. Defendant's Motion In Limini To Preclude Evidence of Defendant's Prior Criminal Conviction, Punishment, Or Probation. DE 37

The Government argues that it must introduce evidence of the Defendant's prior criminal conviction because it wants the jury to know the precise type of judicial proceeding which the Government claims the Defendant "endeavored to obstruct", so it can determine whether or not the Defendant intended to obstruct justice "and what he would stand to gain by obstructing the judicial proceeding." (sic)

Of course, neither the type of judicial proceeding or the objective sought appear to be elements of the crime charged. What the Government appears to be arguing is that the "materiality" of Defendant's conduct, based upon a particular type judicial proceeding, is a jury issue. Defendant agrees that materiality of the alleged conduct *vis a vis* the alleged objective of the Defendant, is a jury question, but believes it can be addressed without mention of the Defendant's prior crime. And, the Government states, *supra*, that it does not intend to use any Rule 404(b) evidence (of other crimes, etc.)

### XI. Objection To [Magistrate Judge's] Order Denying Bond: DE 18

### Defendant Petrillo's Motion For Review of Detention Order, etc. DE 39

Defendant objected to his Order of Detention, DE 16, and seeks review of the Order DE 18; seeks release from detention, Pre-Trial, and has given good reason therefor. The government obtained Pre-Trial

Page 8 of 12

detention solely on the hearsay, uncorroborated, statement that its confidential informant once said, i.e., that, at some time in the past, Defendant had threatened to kill his probation officer. (*sic*). To date, the Government has not come up with any history of reliability of the informant's prior information, record of veracity, etc. And, it is clear that the Defendant has absolutely no prior history of any violence whatsoever, is a family man, suffers various debilitating illnesses, plead guilty to one episode of bank fraud or embezzlement in the past and served 4 ½ years of his probation with no problems, etc., etc. This request for review from the Detention Order issued by the Honorable, Lurana S. Snow, Magistrate Judge, has been pending since December 7, 2000. It is respectfully submitted that there is no good reason to keep the Defendant incarcerated Pre-Trial.

And, it appears now that the alleged hearsay statement by Agent Pinkoff, upon which Agent Lessar relied in his Bond testimony, was either false or misunderstood, since there is absolutely no corroboration of any type whatsoever to support the alleged statement. And, it now appears that Agent Pinkoff traded off the alleged threat... for extremely substantial immunity for prosecution from criminal prosecution of crimes, unrelated to the Defendant, *sub judice*. *See also, discussion of this issue in Defendant's (3rd) Motion For Suppression. DE 45*

### XII. **Defendant Petrillo's Motion To Compel Specific Brady/Giglio/Napue Materials. DE 40**

The Government resists production of specific *Brady Giglio Napue* materials in the Government's possession. This is especially troubling since it is now known that AUSA Lehner participated in obtaining immunity for the Confidential Informant, Pinkoff, that there are specific, written agreements in existence and they can be produced forthwith. Also, the Government can easily produce the W-2 and 1099 forms, books and records and other documents requested by Defendant, *supra*, or admit that none exist, and produce the books and records of their Confidential Agent, Pinkoff's company(s), which will demonstrate Pinkoff's false statements, as to the nature of the funds involved, *sub judice*, which Pinkoff and the Government allege were income to Defendant and, for which reason, the documents created by their Agent Pinkoff were not factual.

Also, the Government has in hand Agent Pinkoff's immunity agreement(s), promises, etc., but declines to produce these materials. As a minimum, these should be produced, forthwith. *See* **Def. DE 40**

Page 9 of 12

### XIII. **Suggestion of Conflict of Interest of Robert Lehnar, AUSA** DE 22

AUSA Lehnar's Suggestion of Conflict arises from his affirmative acts to prevent Defendant Petrillo from attending the Judicial Proceeding [Probation Violation Hearing] on December 4, 2000, which would have determined the Defendant's innocence of the charge for which AUSA had him Indicted on November 30, 2000, and arrested on December 1, 2000, the Friday before the Monday, December 4, 2000 Judicial Proceeding, which Defendant was alleged to endeavor to obstruct. Due to AUSA Lehnar's affirmative acts, Defendant Petrillo was prejudiced by being prevented from proving the falsity of the Indictment, by not presenting the documents in question at the Judicial Proceeding, *in quo*, as AUSA Lehner theorized. This anomalous government action invites inquiry and testimony. AUSA Lehner also *speculates* , in his Motion To Continue the December 4, 2000 Judicial Proceeding, which was filed in 93-442-CR-Zloch, that,

> " ...on November 27, 2000, Petrillo's attorney, Ruben Oliva and a
> forensic accountant met AUSA Lehner at his office and produced
> some of the "backdated documents" in order to convince the United
> States Attorneys Office (*(sic)* that a substantial amount of monies and funds
> that had been received by Petrillo were loans rather than income..." (*Sic)*

Yet, the [ *prior*] Indictment, obtained by AUSA Lehner, reads:

> "creating and causing the creation of false and fictitious documents,
> that is, a Promissory Note/Line of Credit and Line of Credit Draw
> Requests, in order to mislead the United States District Judge, who
> is presiding over the judicial proceeding referenced above, into believing
> that monies and funds that had been received by Louis F. Petrillo were
> loans rather than income..." (*Sic)*

AUSA Lehnar responds to the Suggestion of his conflict with a new [Post-Indictment] theory, as follows;

> '9. It is axiomatic that when a defendant uses his attorney (*sic)* to present false
> and fictitious evidence *(sic)* the crime-fraud exception to the attorney-client
> privilege applies and the attorney may be subpoenaed to give testimony
> of his conversations with his client, which otherwise would be shielded
> by the attorney-client privilege ...' (*Sic)* **DE 28**

It appears, respectfully, that AUSA Lehnar has made himself a "fact witness", *sub judice*. If possible, the Defense is amenable to discussing Stipulations of Fact, to avoid the issues of Conflict, *sub judice*, but none have been proffered to date.

### XIV. Defendant's Request For Written Summaries of Testimony: DE 27

The Government has not responded to Defendant's DE 27

### XV. Defendant's Request For Notice Of Evidence Which Plaintiff/United States Intends To Use At Trial [ Rule 12(d)(2), Fed. R.Crim.P] D 44

On December 4, 2000, Defendant, by counsel, served the Government [AUSA Lehnar] with a Rule 12(d)(2) demand. The Government has neither complied with the Request or presented its reason for not complying with the Request. These documents should be produced, forthwith. Defendant has not agreed to any "open book or file" discovery, which is improper and inappropriate, and reiterates that it demands the Rule 12(d)(2) documents, to which Defendant is entitled.

### Other Defense Motions/Requests

The Defense has addressed those Defense Motions/Requests addressed and contested by the Government in its Omnibus Response and discussed several which the Government has chosen not to address. Should the Court desire further discussion or briefing on any pending Motion or issue, the Defense will, of course, provide same.

WHEREFORE, the motions of the Defense should be granted or set for Hearing, the Government should be Ordered to produce Brady/Giglio Materials and Rule 12(d)(2) materials; the Defendant's Objections and Motion For Review of the Detention Order should be set for evidentiary Hearing before the Honorable Wilkie Ferguson, District Judge; the Motions To Suppress the government agent's interview of Defendant should be granted and all testimony and evidence obtained thereby, suppressed, or the Motions (1), (2) and (3),

*supra.* should be set for evidentiary Hearing; The Motion In Limini as to Ruben Oliva, Esq.'s testimony should be Granted, The Motion To Redact Indictment should be granted and no mention of the Defendant's prior crime should be permitted   In short, the Defense Motions are serious, well taken motions and should be granted on the papers filed to date or, if the Court agrees evidentiary hearing(s) are required, set for evidentiary hearing.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished United States Mail, this 27 day of January, 2001, to Robert J. Lehnar, A.U S A., 99 N E 4th Street, 4th Floor, Miami, Florida 33132-2111 and a copy to Ruben Oliva, Esq., 2250 S.W. 3rd Avenue, Third Floor, Miami, Florida 33129.

> Law Office of Joseph S. Paglino
> Lead Counsel for Defendant
> 12865 West Dixie Highway
> North Miami, Florida 33161
> Tel. (305) 758-8017
> Fax (305) 892-8434
>
> Law Office of Walter A. Reynoso, P.A
> Co-counsel for Defendant
> Grove Forest Plaza, Suite 107
> 2937 Southwest 27th Avenue
> Miami, Florida 33133
> Tel (305) 642-8961
> Fax (305) 441-8745
>
> By _____
>      Joseph S. Paglino, Esq