UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA :
                                              :
          Plaintiff,                          :
vs.                                           :          CASE NO. 00-6334-CR-FERGUSON
                                              :
LOUIS FRANK PETRILLO,                         :
                                              :          Fla. Bar No. 100028
          Defendant.                          :
_____ :

DEFENDANT PETRILLO'S [CORRECTED]  REPLY AND RENEWAL
OF MOTION TO DISMISS INDICTMENT

I

### Prologue

The Defendant's Motion To Dismiss should be granted, based upon the Government's

Response to the motion, in which the Government, quite candidly, lays out its proffered proofs, to

be presented at trial ... which are facially insufficient for conviction under 18 USC 1503. The

Government, by its Response and citations of law, *infra,* concedes as much

The Government's Response shows the evidence it relies upon for conviction is in two parts,

(1) *Creation of an allegedly false promissory note on October 26, 2000 by Government Agent*

*Pinkoff and Defendant Petrillo and accompanying statements, on audio-videotape;* and, (2)

*Events at a November 27, 2000 meeting of defense counsel, a private accountant, AUSA Lehner*

*and a federal investigator ... where a copy of the allegedly false note was produced; as shown in*

*AUSA Lehner's statement , already transcribed and placed of record, sub judice.   DE 17   It is*

*undisputed that Defendant Petrillo did not attend  the November 27, 2000 Meeting*

1

The Government's proffer of the proofs it will present at trial is facially insufficient for conviction, as a matter of law, even under the pre-trial strictures of Rule 12(b)(2), Fed.R.Crim.P. , because the Government can not prove at trial that Petrillo's actions "were directly intended to prevent or otherwise obstruct the processes of a specified judicial proceeding in a way that is more than merely speculative." *United States v. Vaghella*, 169 F 3d 729, at 734 - 36 (11th Cir. 1999)

## II

### The Government's Proffered 'Two Part' Evidence For Trial

### (1)

### The Creation Of An Allegedly False Promissory Note

On October 26, 2000, the Government audio-videotaped Defendant and an, undisclosed, Government Agent, Lawrence Pinkoff, at Agent Pinkoff's office, which, the Government claims, shows, *inter alia*, the formation of a "false" document by Pinkoff and Defendant, i.e. a promissory note/line of credit with copies of checks attached    [Tape 2nd ]

Agent Pinkoff is shown using a computer/ word processor to type the  promissory note/line of credit and attaching copies of checks from Agent Pinkoff's files to the note. The Government claims the note is backdated, false and fictitious [and does not merely memorialize past events indicated by the attached checks]. [Tape 2nd ]

The Government's Response proffers the portion of the tapes, it will use at trial to show Petrillo "might" use the promissory note at a Hearing. The proffer is legally insufficient.
Petrillo.

> " I'm in violation but that's okay.  You know, the most they can give me is
> a year.  Well, at the most, you know, but in reality it's better than five years
> instead.  Okay, if we use that to circumvent for our money laundering it's
> even worse." Tr. 2nd , p. 24

Petrillo.

"I mean 500,000 on a line of credit is a lot of fucking money unsecured.

See this (tapping) might (sic) go to my hearing ...

That'll help, it'll eliminate anything from, from your end to me or on

laundering too, but it all eliminates all of this shit for us too...

Yeah, me on the income side, but see I could defer my income as a loan,

I don't have to show income as ah ... this is not income it's a loan." Tr.2nd pp.62, 63

"It's close enough. And cause a lot of this will come out at this hearing

and will be a new point at that time " . . . .

"Agent Pinkoff

What's the hearing ?

Petrillo·

Well, it was originally November 12<sup>th»·</sup>        [Tr.2nd, p.66]

Other than the foregoing excerpts which the Government proffers in its Response to Defendant's Rule 12(b)(2) Motion To Dismiss, the Government is unable to proffer any other evidence that Petrillo had made a definite decision to use the questioned promissory note at any judicial proceeding or before any Grand Jury [Gov. Tr. 1st, 2nd] as is now required for conviction by *United States v. Aquilar*, 115 S.Ct.2357, (1995), *United States v. Vaghela*, 169 F.3d 729 (11th Cir. 1999)

The creation of the 'note" and Defendant's statement are insufficient, as a matter of law, to convict the Defendant of 18 USC 1503 under present law, *See United States v. Aguilar, supra,* 115 S.Ct. 2357 (1995), and *United States v. Vaghela,* supra, 169 F.3d 729 (11th Cir. 1999).

In order to convict someone of violating 18 USC 1503 for obstruction of justice, the government must prove, *inter alia,* that the accused ***had knowledge that the document would be used in a judicial proceeding ... and ... would be likely to affect the judicial proceeding,*** to wit:.

3

"... if the defendant lacks knowledge that his actions are likely to affect
the judicial proceeding, he lacks the requisite intent to obstruct."
*United States v. Aquilar, supra,* 115 S.Ct.2357, (1995), *at* 2362.

As a matter of law, Defendant can not be convicted of violation of 18 USC 1503, for
"creating" the backdated note with Agent Pinkoff, on October 26, 2000, even if a jury determines
[as the government claims] the note was false and did not accurately memorialize past events.
Creation of such a note, in and of itself, is insufficient to convict under 18 USC 1503, and the
Government admits as much in its Response. *United States v. Vaghella,* 169 F.3d 729 (11th Cir. 1999)

In order to get to a jury, the Government must also present some proofs that, even if the note
was false... the Defendant knew the document would be used in a particular judicial proceeding ...
and the document was likely to affect a particular judicial proceeding.   Yet, the tapes prove just the
opposite ... since they show that Petrillo had made no such decision.  And, the Government concedes
this by its quoted excerpt which shows that no decision had been made by Petrillo to use the
questioned note in any judicial proceeding.  Per the Government's position, the opposite is shown.

"See this (tapping) might go to my hearing ..." (Tr. 2nd pp. 61,62)

Under *Aguilar, supra,* and *Vaghela,* supra, this indecision by Petrillo precludes Petrillo's conviction.

In *United States v. Vaghella, supra,* Vaghela and Desai created false documents. Some
time later, the documents were subpoenaed by a grand jury. *id, at 731. Prior to producing the
documents .... Desai altered them by adding a false memo that certain checks were paid in exchange
for consulting work. Id, at 731 T*    The Eleventh Circuit held that this was not sufficient to convict
Desai and Vaghela of violating 18 USC 1503.  The Eleventh Circuit stated the [now] applicable law
as follows:

4

" In August 1994, Desai told Vaghela that Extendicare's payments to Vaghela

were being investigated, and that they needed to draft a contract that would

legitimize them. The pair then drafted and signed a contract, backdated to

August 1993, stating that all of Extendicare's payments to Vaghela had

been made in exchange for Vaghela's "consulting services."

"Some time later, Desai was interviewed by federal agents. Subsequently, in

December 1995, Desai called Vaghela to discuss strategy. Vaghela told him to

"stick with the contract." On January 31, 1996, a federal grand jury subpoenaed

records from Desai. Desai produced the back-dated contract and copies of the

checks he had given Vaghela. Before producing the checks, Desai altered them,

adding a memo showing that they were paid in exchange for "consulting work."

Desai also produced 1099 forms stating that Desai had employed Vaghela as a consultant in

1993 and 1994" *Id, at 731*

The 11th Circuit's reasoning, in *reversing* Vaghela's and Desai's convictions on these facts
applies with equal force to *United States v. Petrillo, sub judice;*

"Vaghela and Desai certainly agreed to stick with a contract they knew to be false.

But if drawing up and asserting the veracity of a false document would not itself

ground a substantive charge of obstruction of justice ... and it is clear that it would

not do so under *Aguilar*, which requires that "the act must have a relationship

in time, causation, or logic with the judicial proceedings," *Aguilar*, 515 U.S. at 599,

115 S.Ct. 2357 — their agreement to do so cannot ground a conspiracy charge based

on the same offense.    And because the government is therefore unable to show that

5

the pair agreed to commit one or more acts in violation of Sec. 1503, Vaghela's

conviction for conspiracy to obstruct justice must be reversed." *United States v.*

*Vaghela*, 169 F.3d 729 (11th Cir. 1999) at 735.

In *Vaghela, supra*, Desai altered the documents after he was subpoenaed to bring the

documents to the grand jury and actually produced the false documents to the grand jury. *Id, at 731*

Here, Petrillo stated, on the surveillance tape, Tr. 2nd pp. 61, 62 .... only that " this might" come up

at Hearing. Petrillo's statement of indecision, relied upon by AUSA Lehner, to indict, arrest and

detain Petrillo, without bond ... are exculpatory under *Vaghela ... not incriminating*. Dismissal is

required on this point alone ... even assuming, *arguendo*, the "note" is false. *United States v.*

*Vaghella, supra*.

### The Government's Inadvertent *Errata*

[Note: In its Response, attempting to distinguish *Vaghela*, from Petrillo's exculpatory

language of the October 26, 2000 audio-videotape, the government [***inadvertently***] mis-states the

holding in *Vaghella*, at Page 5 of its Response. The erroneous implication from the Government's

mis-cite is that no recently prepared documents were involved in *Vaghela* or submitted to the grand

jury's subpoena.. In fact, after receiving the subpoena, documents were falsified and submitted to

the grand jury, which the Government's synopsis, inadvertently, omits.

*The* Government's synopsis states:

In <u>Vaghela</u>, <u>supra</u>, the defendant signed a false backdated contract and gave

it to a confederate. A year and a half later, the grand jury subpoenaed documents

from the confederate, who produced the contract. At the time that the defendant

6

signed the false contact, there was no grand jury investigation pending. The Court

held that there as insufficient basis for Vaghela to believe the contract would be

subpoenaed to the grand jury, and, therefore, there was insufficient proof to

support a conviction of 18 USC 1503. The Court stated that for the government

to prove a violation of 18 USC 1503 it must show that the defendant's actions

"'were directly intended to prevent or otherwise obstruct the processes of a

specified judicial proceeding in a way that is more than merely 'speculative'.

169 F.3d at 734-36 ...


In fact, it is clearly stated in *Vaghela, supra,* that immediately after being subpoenaed to bring

documents to the Grand Jury ... and, prior to bringing the documents to the Grand Jury, Desai

altered some of them before producing them to the Grand Jury. The Government, inadvertently,

overlooks this portion of the decision [and Petrillo's statement showing that he did not even know

if the document would be used in any Hearing].

[The precise excerpt from *Vaghella,* [ *showing recent falsification of documents prior to production*].

"Desai produced the back-dated contract and copies of the checks he had

given Vaghela. Before producing the checks, Desai altered them, adding a

memo showing that they were paid in exchange for "consulting work." Desai

also produced 1099 forms stating that Desai had employed Vaghela as a

consultant in 1993 and 1994" *Id. at 731*

Inadvertently, the Government mis-cited *Vaghela,* which leads to an incorrect conclusion, that

documents were not altered prior to their submission to a grand jury.   Yet, it is clear the alterations

7

to the checks were made after they were subpoenaed and shortly prior to their submission to the

Grand Jury , pursuant to a subpoena. *Id.*

*The undisputed evidence to be produced at trial by the Government's proffer ... shows that Petrillo never produced the "note" to a grand jury or a judicial proceeding or endeavored to do so or even made a decision to do so.*

In any event, the Government's recognition of *Vaghela, supra,* demonstrates its concession that it can not convict Petrillo of violating 15 USC 1503, since it is undisputed that there is no proof and can be no proof that Petrillo specifically prepared the "note" knowing it would be used in the December 4, 2000 Hearing and would be likely to influence the Hearing.

Defendant Petrillo's innocence of the charge is shown by the Government's own transcript evidence, that Petrillo did not even know if the "note" might be used at any Hearing. In fact, the Government knows Petrillo had made no decision to use the note at any hearing, since that is proved by the tapes ... and the Government knows that even Petrillo's attorney had made no decision to use the "note" at any Hearing. *Infra.* This is shown by Petrillo's attorneys response to the Government's motion to disqualify him from representing Petrillo, DE 49, by alleging conflict and asserting that it would invoke the crime-fraud doctrine to call him as a witness for the Government. In his response to the motion, Petrillo's attorney stated that he had made no decision to use the note at the Hearing. DE 49. Thus, there is, without question, insufficient evidence to convict Petrillo of violation of 18 USC 1503 on the Government's proffer of evidence it will produce at trial.

[Oddly .... AUSA Lehner, himself, knowingly chose to preclude any further proofs as to Defendant's endeavoring to use the note at Hearing or his attorney's intent to use the note at Hearing ... since AUSA Lehner indicted on November 30, 2000, arrested him on December 1, 2000,

8

and moved to cancel the December 4, 2000 Hearing on December 1, 2000, rather than wait to see

if Petrillo or his attorney would "endeavor" to use the note at the December 4, 2000 Hearing. Thus,

solely by his decision to arrest Petrillo prior to the December 4, 2000 Hearing, AUSA Lehner,

prevented the Hearing ... at which he claims the "note" was to be used ... from taking place. ]

### (2)

### The Meeting Of November 27, 2000

The Government also proffers AUSA Lehner's testimony, describing a November 27, 2000

meeting [which Petrillo did not attend] where the Government charges Petrillo's violation of 18

USC 1503 was completed . in absentia. [ The Indictment alleges a time-frame for commission of the

crime as being October 26, 2000 to November 27, 2000 ] DE 3    AUSA Lehner's proffer of the

events of the November 27, 2000 meeting, is contained in AUSA Lehner's statement to the Court

at Defendant's December 4, 2000 Bond Hearing

In his statement, *infra*, AUSA Lehner describes the events he and Investigator Lou Sellars

witnessed at a November 27, 2000 meeting with Petrillo's attorney, Ruben Oliva and an accountant

named Stanley Foodman.

### AUSA Lehner's Excerpted Statement [DE 17]

"... Then on November 27, as shown in the indictment, another event occurred. Mr

Petrillo's ... Mr. Petrillo's attorneys ... attorney rather, Rubin Oliva and Mr. Oliva's forensic

accountant, Mr. Foodman,  F O O D M A N,  appeared in our offices, the U.S. Attorney's

office in Miami. and with Mr. Sellars, who is here in court with me, and we met with Mr.

Oliva and Mr. Foodman. Mr. Sellars is a financial auditor with the economic crime section

of the U.S. Attorneys office in Miami.

9

At that time, the very documents, some of the very documents that were seen on the audio/video surveillance of October 26th were submitted to Mr. Sellers and myself by Foodman, the forensic accountant, and Mr. Oliva, the defense attorney for Mr. Petrillo, urging us to believe that these monies that we knew from — from bank records and from an interview with Mr. Pinkoff were income to Mr. Petrillo.

Mr. Foodman and Mr. Oliva urged us to believe that these were just loans, and that the bank records showing monies going into Mr. Petrillo's bank account were not income to him and that he, Mr. Petrillo, was being truthful with the probation officer when he said that his income was only $50,000 a year.

Instead, we have this promissory note and these lines of — line of credit, the draw requests, the promissory note being for $300,000 allegedly drawn up on November 1st of 1998, by Mr Petrillo and Mr. ---and Mr. Pinkoff. But as we see in the audio and visual surveillance of October the 26th of this year they were actually drawn upon on computer right in front of the viewers, the audio/visual viewers, that you could be , if you wish to see this audio and video, that these documents were drawn up on "November the 27[th]" of this year..." Tr. 11, 12

[Mr. Lehner, presumably, meant to say "drawn up on "October 26th" of this year]

---

**AUSA Lehner's statement also exonerates Petrillo and shows the insufficiency of the charge.**  Under present, settled, law, *United States v. Aguilar*, 115 S.Ct. 2357 (1995), and *United States v. Vaghela*, 169 F.3d 729 (11th Cir. 1999), the production of a false document to an AUSA and federal investigator at a meeting ancillary to a judicial proceeding, is insufficient to convict an accused under 18 USC 1503.  The Government, by its citation to *United States v. Aguilar, supra,* concedes this point.  In *Aguilar,* the United States Supreme Court stated its position, as follows:

10

"Because respondent knew of the pending proceeding. the Government

therefore contends that Aguilar's [false] statements are analogous to those

made directly to the grand jury itself in the form of testimony or false

documents. ... We think the transcript citation relied upon by the Government

would not enable a rational trier of fact to conclude that respondent knew *(sic)*

that his false statement would be provided to the grand jury, and that the

evidence goes no further than showing that respondent testified falsely to

an investigating agent.  Such conduct, we believe, falls on the other side of

of the statutory line from one who delivers false documents to the grand jury

itself.  Conduct of the latter sort all but assures that the grand jury will consider

the material in its deliberations.  But what use will be made of false testimony

given to an investigative agent who has not been subpoenaed or otherwise

directed to appear before the grand jury is far more speculative.  We think it

can not be said to have the "natural and probable effect" of interfering with the

due administration of justice." *U. S. v. Aguilar*, 115 S.Ct. 2357 (1995), *at 2363*


Petrillo was not at  the November 27th meeting at AUSA Lehner's office. presented no

documents to anyone for any purpose and can not be charged for conduct he did not commit at a

meeting he did not attend.   And. under *Aguilar*, nothing his attorney or the accountant did was illegal

or can be *transferred* to Petrillo to sustain a criminal charge.   And ...AUSA Lehner could not have

been  misled by the "note" nor could he, inadvertently, mislead any judge or grand jury by accepting

or claiming the validity of the note ... because  AUSA Lehner claims he knew the note to be false

when  Government Agent Pinkoff typed it up on October 26, 2000 and at all times material thereto.

Hence, if the note is false, the Government. by Agent Pinkoff and AUSA Lehner, knew this already.

From the Government's Response, AUSA Lehner's statement of facts already of Record, and applicable law, *United States v. Aguilar*, 115 S.Ct. 2357 (1995), *United States v. Vaghela*, 169 F.3d 729 (11ᵗʰ Cir. 1999), it is clear that Defendant Petrillo has not committed any violation of 18 USC 1503, and is not legally charged with violation of 18 U.S.C. 1503.

*See, United States v. Aguilar, supra*, 115 S.Ct. 2357 (1995), *at 2363:*

> "Because respondent knew of the pending proceeding, the Government
> therefore contends that Aguilar's [false] statements are analogous to those
> made directly to the grand jury itself in the form of testimony or false
> documents ... We think the transcript citation relied upon by the Government
> would not enable a rational trier of fact to conclude that respondent knew
> that his false statement would be provided to the grand jury, and that the
> evidence goes no further than showing that respondent testified falsely to
> an investigating agent. Such conduct, we believe, falls on the other side of
> of the statutory line from one who delivers false documents to the grand jury
> itself. Conduct of the latter sort all but assures that the grand jury will consider
> the material in its deliberations. But what use will be made of false testimony
> given to an investigative agent who has not been subpoenaed or otherwise
> directed to appear before the grand jury is far more speculative. We think it
> can not be said to have the "natural and probable effect" of interfering with the
> due administration of justice." *U. S. v. Aguilar*, 115 S Ct. 2357 (1995), *at 2363*

*See also, United States v. Vaghela, supra*, 169 F.2d 729 (11ᵗʰ Cir.1999), in which the Eleventh Circuit, applying *Aguilar, supra*, held that, since *Aguilar*, using a "false" document in an a proceeding ancillary to the actual judicial proceeding is not sufficient to convict under 18 U.S.C. 1503, i.e., the November 27, 2000 meeting .. which Petrillo did not attend.

12

" ..The action taken by the accused must be with an intent to influence judicial or grand jury proceedings, it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority. ..

"As we saw in Aguilar, the defendant also sought to hide his wrongdoing by lying to federal agents. See Aguilar, 515 U.S. at 596-97. Yet, notwithstanding that a grand jury had already begun its investigation into that case, the Supreme Court found that the connection between Aguilar's false testimony at the time it was given and its effect on the judicial proceedings in question was too speculative to support the conclusion that it would have "the natural and probable effect of interfering with the due administration of justice" because, as we have seen, his conviction was reversed and therefore the act he would have conspired to commit would not under Aguilar be itself illegal.

This is precisely the case we have here. Vaghela and Desai certainly agreed to stick with a contract they knew to be false. But if drawing up and asserting the veracity of a false document would not in itself ground a substantive charge of obstruction - and it is clear that it would not do so under Aguilar, which required that "the act must have a relationship in time, causation, or logic with the judicial proceedings, 'Aguilar, 515 U.S. at 599 - their agreement to do so cannot ground a conspiracy charge based on that same offense ..."

" ...The action taken by the accused must be with an intent to influence judicial or grand jury proceedings, it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or gand jury's authority ... " *Id.*

The United States Supreme Court and the Eleventh Circuit, teach that the Governments proffer of proofs it will depend on at trial .... upon which the Government bases the Indictment and prosecution of Petrillo, are legally insufficient to charge or convict Petrillo of violating 18 U.S.C. 1503. On this basis, the Court can dismiss the Indictment, pre-trial. The Government's argument that the matter, although legally insufficient for conviction, should, nevertheless, go to trial, is not supported by any authority or fact.

## Conclusion

It appears Petrillo has been wrongfully imprisoned in the Federal Detention Center since his arrest on December 1, 2000, more than 120 days, without Hearing or trial, on a facially and substantively deficient indictment, upon which no conviction of 18 USC 1503 can legally stand. In the interests of Justice, Petrillo should be immediately released from detention and the Indictment dismissed. Now charged with knowledge of *United States v. Aguilar, supra,* and *United States v. Vaghela, supra,* having reviewed the Government's proofs for trial; the Government must realize that Petrillo is improperly charged and detained.

## Certificate Of Good Faith

Upon prior conferral and pursuant to his response to Defendant's Motion To Dismiss, AUSA Robert J. Lehner declines to request dismissal of the Indictment at this point of the proceedings..

Respectfully Submitted:

Law Office of Joseph S. Paglino, Esq.
Lead Counsel for Defendant
12865 West Dixie Highway
North Miami, Florida 33161
Tel. (305) 758-8017
Fax (305) 892-8434.

14

And

Law Office of Walter A. Reynoso, P.A.
Co-counsel for Defendant
Grove Forest Plaza
2937 S.W. 27th Avenue, Suite 107
Coconut Grove, Florida 33133
Tel. (305) 642-8961

By _____
    Joseph S. Paglino, Esq.

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true copy of the foregoing was furnished by mail to Robert Lehner, AUSA, and to "firewall" AUSA David A. Frank, Office of the United States Attorney, 99 N.E. 4th Street, 4th Floor, Miami, Florida 33132-2111, and to AUSA Davis Chase, II, Office of the United States Attorney, 500 E. Broward Blvd., Fort Lauderdale, Florida 33394, this 3 day of April , 2001.

Joseph S. Paglino, Esq.

15