UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6334-CR-FERGUSON

Magistrate Judge Snow

UNITED STATES OF AMERICA,  )
                           )
    Plaintiff,             )
                           )
v.                         )
                           )
LOUIS F. PETRILLO,         )
                           )
    Defendant.             )
_____/

**NIGHT BOX FILED**
MAY 17 2001
CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

### GOVERNMENT'S RESPONSE TO DEFENDANT PETRILLO'S SECOND MOTION TO DISMISS FACIAL INSUFFICIENCY OF INDICTMENT

The United States of America, by and through its undersigned Assistant United States Attorney, hereby responds to "Defendant Petrillo's Second Motion To Dismiss Facial Insufficiency Of Indictment" ("Motion"), and states as follows:

1. In his Motion, defendant Petrillo claims that the grand jury indictment is defective in that it fails to allege an "essential allegation" of the crime of Obstruction of Justice, under 18 U.S.C. §1503, to wit, "that the conduct alleged against the defendant must be such, 'that its natural and probable effect would be the interference with the due administration of justice.'"

2. 18 U.S.C. §1503 makes it a federal crime if an individual "corruptly... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice."

3. Fed.R.Crim.P. 7(c) sets out the requirements for framing a charging document:

> "The indictment... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.... It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. The indictment... shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated."

4. In United States v. Perkins, 748 F2d 1519 (1984), the Eleventh Circuit ruled on the propriety of the wording of an indictment charging the defendant with Obstruction of Justice, under 18 U.S.C. §1503, and Conspiracy to Obstruct Justice, under 18 U.S.C. §371. The §371 count failed to identify the judicial proceeding that the defendant allegedly conspired to obstruct. The §1503 count failed to label the defendant's allegedly obstructive grand jury testimony as false and/or evasive, and it failed to allege how the defendant's grand jury testimony obstructed justice.

5. The Perkins Court cited the Supreme Court standard set out in Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907 (1974), in ruling on questions of the sufficiency of the

wording of an indictment:

> "Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or a conviction in bar of future prosecutions for the same offense."

748 F.2d at 1525.

6.  In considering the defense attack as to the wording of the §1503 and §371 counts, the Perkins Court quoted from two binding Fifth Circuit cases, United States v. Markham, 537 F.2d 187, 192 (5th Cir.1976), and United States v. Haas, 583 F.2d 216, 219 (5th Cir. 1978), stating "[t]he validity of an indictment is determined from reading the indictment as a whole and... by practical, not technical considerations," and "[t]he test is not whether the indictment could have been framed in a more satisfactory manner but whether it conforms to minimal constitutional standards." 748 F.2d at 1524.

7.  The Eleventh Circuit observed that Perkins had been adequately informed of the charges against him, that he could have availed himself of a bill of particulars to "cure omissions of details that might enable the defendant to prepare his defense," (quoting from Norris v. United States, 152 F.2d 808, 811 (5th Cir. 1946), and then held:

3

> "...the indictment states what Perkins said and that his statements obstructed justice, but not how the statements obstructed justice. Nevertheless, the indictment did adequately inform Perkins of the charges against him. He should have sought any clarification through a bill of particulars. Hence, we find this ground without merit."

748 F.2d at 1526.

8. The instant indictment fully informs defendant Petrillo of the charges against him and does not contain any of the deficiencies that the Eleventh Circuit found not to render the indictment defective in <u>Perkins</u>. The indictment informs defendant Petrillo that he is charged with having "corruptly endeavored to influence, obstruct, and impede the due administration of justice" in a particular judicial proceeding, to wit, "<u>United States v. Louis F. Petrillo</u>, Case No. 93-442-ZLOCH, in a Violation of Conditions of Probation judicial proceeding pending in the United States District Court, Southern District of Florida." The indictment further informs defendant Petrillo that the instruments that he created, and caused the creation of, were "false and fictitious documents," and went on to describe the documents as "a Promissory Note/Line of Credit and Line of Letter Draw Requests." The indictment further informs defendant Petrillo that the documents so described were drawn by him "in order to mislead the United States District Judge, who is presiding over the judicial

4

proceeding referenced above." The indictment further informs defendant Petrillo as to how the presiding judge will be mislead, to wit, "into believing that money and funds that had been received by defendant Louis F. Petrillo were loans rather than income." At the time of the return of the indictment, defendant Petrillo already had been served with the then pending Violation of Probation Petition (a copy of which is herein attached as Exhibit 1), which was the basis of the "Violation of Conditions of Probation judicial proceeding" that is referred to in the indictment. There is nothing further that defendant Petrillo needs in order to be fully informed of the 18 U.S.C. §1503 crime of which the grand jury indicted him. He needs no bill of particulars, nor has he sought any.

9. By the instant Response, the government does not argue as to what would serve as a proper instruction in informing the jury as to how to go about determining whether the defendant's actions constituted an endeavor to influence, obstruct, or impede the due administration of justice. What is clear is that jury instructions are not to be confused with stating proper charging language in an indictment, and that the failure to include jury instructions in the body of an indictment is not cause to dismiss the indictment.

10. The defendant's Motion repeats the cite of United States v. Aguilar, 515 U.S. 593, 115 S. Ct. 2357 (1995), which the

defendant argued in "Defendant's Motion To Dismiss," DE 53. In "Government's Response To Defendant Petrillo's Motion To Dismiss," DE 56, the government responded to the defendant's argument as to Aguilar and United States v. Vaghela, 169 F.3d 729 (11th Cir. 1999), and will not repeat in detail that response here. However, it should be pointed out that the government does not quarrel with either of those cases. Those cases stand for the proposition that in order to commit Obstruction of Justice, in violation of 18 U.S.C. §1503, the defendant's action must have "a relation in time, causation, or logic with the judicial proceeding." At the trial of the instant case, the government's evidence will prove beyond a reasonable doubt that the defendant's actions had a close relationship in time, causation, and logic with influencing, obstructing, and impeding the defendant's pending Violation of Probation judicial proceeding.

11. The government's evidence will show that defendant Petrillo's Violation of Probation Hearing was scheduled to be heard on November 9, 2001, in which he was charged, inter alia, with earning millions of dollars while reporting to his Probation Officer that his income was only $50,000 a year. The evidence will show that on October 24, 2000, defendant Petrillo's attorney filed a motion for a continuance of that Violation of Probation Hearing, stating:

> "It appears that more time will be required by the parties to prepare for said hearing. Specifically, several of the grounds for revocation involve failure to report income by the Defendant. In this regard, the Government has provided undersigned counsel over 2,000 documents which must be reviewed and analyzed. In addition, it is the parties stated intent to meet prior to the hearing in order to attempt to jointly review and discuss the objections with the purpose of resolving, if possible, the pending violations. Financial analysts for the respective parties will also attempt to narrow the specific issues or matters in dispute in order to stipulate to facts not in dispute."

DE 118, at 1, of Case No. 93-442-CR-ZLOCH.

12. Two days later, on October 26, 2000, defendant Petrillo manufactured back-dated, false and fraudulent documents, including a Promissory Note/Line of Credit and Line of Credit Draw Request, in an attempt to make his income appear to be loans. The government's proof will include a video and audio tape recording showing that the defendant repeatedly specifically referred to his pending Violation of Probation Hearing at the time that he manufactured these back-dated, false and fraudulent documents.

13. On November 27, 2000, defendant Petrillo's attorney and a forensic accountant hired by that attorney presented some of these bogus documents to the United States Attorney's Office in an "attempt to narrow the specific issues or matters in dispute in order to stipulate to facts not in dispute," as stated in defendant

7

Petrillo's October 24, 2000 "Unopposed Motion For Continuance Of The Revocation Hearing."

14. It should be noted that in <u>United States v. Louis F. Petrillo</u>, Case No. 93-442-CR-ZLOCH, defendant Petrillo filed a motion, DE 150, to dismiss the same Obstruction of Justice violation as charged in the instant indictment, citing <u>Aguilar</u> and <u>Vaghela</u>. That motion was denied. Attached hereto, as Exhibit 2, is the Order, DE 151, denying such motion.

15. The government maintains, as outlined herein, that the proof to be presented at trial as to defendant Petrillo's commission of the crime of Obstruction of Justice, in violation of 18 U.S.C. §1503, will be overwhelming.

WHEREFORE, for the reasons stated herein and in "Government's Response To Defendant Petrillo's Motion To Dismiss," DE 56, "Defendant Petrillo's Second Motion To Dismiss Facial Insufficiency Of Indictment" should in all respects be denied.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
ROBERT J. LEHNER
ASSISTANT UNITED STATES ATTORNEY
FLORIDA BAR NO. 0861669
99 N.E. 4th Street, 4th Floor
Miami, Florida 33132-2111
Tel. No. (305) 961-9020
Fax No. (305) 530-6168

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by mail this ___15th___ day of May, 2001 to Joseph S. Paglino, 12865 West Dixie Highway, Second Floor, North Miami, Florida 33161, Walter A. Reynoso, Esq., 2937 S.W. 27th Avenue, Suite 107, Coconut Grove, Florida 33133, and Ruben Oliva, Esq., 2250 S.W. 3rd Avenue, Third Floor, Miami, Florida 33129.

ROBERT J. LEHNER
ASSISTANT U.S. ATTORNEY

United States Government
**M E M O R A N D U M**

**DATE:** August 3, 2000

**FROM:** Frank X. Will
United States Probation Officer - Snapper Creek

**SUBJECT:** Petrillo, Louis F.
Dkt. No. 93-442-CR-ZLOCH
SD/FL Pacts 35705

**TO:** The Honorable William J. Zloch
United States District Judge, Southern District of Florida.

## VIOLATION OF PROBATION AND REQUEST FOR A WARRANT

### I. COMPLIANCE WITH SUPERVISION CONDITIONS

On March 21, 1995, subsequent to a plea of guilty to Counts One and Two of the Superseding Information, Misapplication of Bank Funds and Bank Fraud, the above referenced was sentenced to one year and one day as to Count One. As to Count Two, he was placed on five years probation, to run consecutive to Count One, and as a special condition of supervision, he was ordered to make restitution of $1,983,160.00 to FDIC and $18,690.00 to Big Ben Corporation. On February 23, 1996, he was released to begin his term of probation, which will terminate on February 22, 2001. On February 27, 1997, The Honorable C. Clyde Atkins, Senior United States District Judge, SD/Fl., issued an Order reducing restitution to the FDIC from $1,983,160.00 to $83,160.00.

From the date of the probationer's release until on or about September 1997, the probationer was employed by First Southeast Capital, allegedly owned solely by his son, Louis A. Petrillo. Upon the merger of VIP Medical, owned by Petrillo family members, with HP of America/HP Holdings, First Southeast Capital became a consultant with the merged company. However, once both parties filed civil suits against each other, First Southeast Capital's consulting contract was then terminated. Due to questions concerning the probationer's true ownership interest in the family businesses, based on public documents signed by the probationer and listing the probationer as an officer, it was suggested the probationer find employment with non-relatives. On or about October 1997, the probationer began employment with Tropical Medical Equipment. At about this same time the probationer informed this officer that he was no longer working for First Southeast Capital nor did First Southeast Capital have any business dealings with Tropical Medical.

On January 6, 1999, the probationer requested travel to San Jose, Costa Rica, for business purposes, beginning January 19, 1999, and returning January 23, 1999. On January 20, 1999, at the recommendation of the U. S. Probation Office, The Honorable C. Clyde Atkins, Senior united States District Judge, SD/FL, denied the request.

On January 15, 1999, this officer discussed with the probationer discrepancies regarding nine

EXHIBIT
1

The Honorable William J. Zloch
United States District Judge, SD/Fl.
August 3, 2000
Page 2

RE: PETRILLO, Louis
Dkt. No. 93-442-CR-ZLOCH
SD/Fl. Pacts 35705

authorized trips out side the Southern District of Florida. These discrepancies concerned hotel receipts which reflected one overnight hotel stay instead of the two nights requested on his travel applications. The probationer had claimed all of the following reasons occurred; he received a free night lodging due to his Club Ramada Travelers Points; he spent one night in his employer's hotel room; or he came back to Miami early. The Probationer was instructed to provide documentation of all the reasons.*

As of this writing, the probationer has not provided any documentation to explain his whereabouts during those nine trips. To the contrary, on May 2, 2000, the probationer's attorney, Rubin Oliva, faxed documents from Club Ramada to this officer which reflect that from January 1, 1997 until January 7, 2000, none of the probationer's Travelers Points were redeemed. Therefore, no free overnight lodging was received. This officer has spoken with the probationer and his attorney regarding the length of time given to verify the missing days, whereupon, both requested more time to obtain verification. On May 8, 2000, this officer corresponded with the probationer and listed the dates and hotel receipt invoice numbers of each day in question, requiring an answer by July 7, 2000. On May 15, 2000, this officer received a fax from the probationer's attorney requesting the hotel receipt invoice numbers, even though they were all ready given to the probationer, and upon receipt of this information will attempt to comply with this officer's instructions. The probationer has failed to provide the requested documentation per instructions.

On February 3, 1999, the probationer filed a motion requesting non reporting status and/or travel modifications to his conditions of probation. On March 22, 1999, The Honorable Edward B. Davis, Chief United States District Judge, SD/Fl., issued an order denying non reporting probation and granted permission to travel outside the continental United States for business purposes only.

On October 27, 1999, The Honorable Lenore Carrero Nesbitt, United States District Judge, SD/Fl., issued an Order reducing restitution owed to the FDIC by an additional $43,160, prompted by the FDIC and the probationer's payout agreement.

On December 1, 1999, this officer was notified by Investigator Sandra Lozowicki, Office of the Attorney General, State of Florida, Medicaid Fraud Control Unit, that search warrants were served and carried out on this same date, pertaining to a criminal medicaid fraud investigation. The warrants were for the probationer's residence, past employments, and current employment locations. During the search of the probationer's residence, Agents for the State of Florida found $41,850 in US currency and $3,100 in traveler's checks.

It has been reported to this officer that the currency was found in a brief case which was located in a room/den/office where bank and medical documents relating to First Southeast Capital and Medical Clinics linked to the probationer. Additionally, information was received that the

The Honorable William J. Zloch
United States District Judge, SD/Fl.
August 3, 2000
Page 3

> RE: PETRILLO, Louis
> Dkt. No. 93-442-CR-ZLOCH
> SD/FL Pacts 35705

probationer's spouse was questioned concerning the ownership of the currency, whereupon, she denied any knowledge of the currency. On December 2, 1999, this officer spoke with Patra Liu, Assistant Attorney General for the State of Florida, who confirmed the probationer and employment associates are under criminal investigation for possible medicaid fraud. The probationer failed to notify this officer of his possession of $44,950 either on his Monthly Supervision Reports or his Personal Financial Questionnaires.

On December 2, 1999, this officer corresponded with the Court requesting the originally granted out of country travel privileges be rescinded. On December 22, 1999, Your Honor granted the request and rescinded the probationer's out of country travel privileges. On December 29, 1999, the probationer turned in his US passport and was notified by this officer he would no longer be permitted to travel outside the Southern District of Florida until the criminal investigation was concluded.

On January 7, 2000, the State of Florida filed a Petition For Judgment of Forfeiture, Case No. 00-00473-CA 10, for the above stated currency. As of this writing, the probationer nor his attorney have responded to the State of Florida's Petition. Additionally, the probationer has refused to answer any questions concerning the currency other than claiming: he has no knowledge of the currency; the residence belongs to his spouse; and/or the currency might belong to his spouse. On May 16, 2000, The Clerk of the Court for the Eleventh Judicial Circuit entered a Default against the probationer for failure to file and serve a response or defense to the Rule to Show Cause on the Petition For Judgment of Forfeiture either upon the Clerk or upon the Attorney for the State of Florida as required by law.

On June 28, 2000, this officer received copies of checks from Keith Davidson, Investigative Analyst, Office of the Attorney General, State of Florida, Medicaid Fraud Control Unit, which were obtained by search warrants during the above referred criminal investigation. The checks were issued by First Southeast Capital, payable to the probationer, endorsed by the probationer, and deposited into three different bank accounts, at two different banks, Nations and Capital/Union Planters, from March 18, 1998, through June 25, 1999. None of the accounts were reported by the probationer to this officer on either his Monthly Supervision Reports or Personal Financial Questionnaires. The checks reflect a sum of $520,062.49 was deposited in the three accounts. At no time did the probationer report to this officer of ever receiving this referenced income nor that he was employed by First Southeast Capital after October 1997.

On March 23, 2000, this officer met with Internal Revenue (IRS) Agent Mike Palmer and US Customs Agent Karl Muller, of the Southern District of Georgia, who reported that there is an ongoing criminal investigation of Lawrence "Larry" Pinkoff, the owner of Golden Isles Pharmaceuticals/Tropical Medical Equipment and the probationer's employer. On April 14, 2000,

The Honorable William Zloch
United States District Judge, SD/Fl.
August 3, 2000
Page 4

> RE: PETRILLO, Louis
> Dkt. No. 93-442-CR-ZLOCH
> SD/Fl. Pacts 35705

this officer was notified by IRS Agent Palmer that a search warrant was served on Mr Pinkoff at his residence on March 30, 2000, regarding possible violation of Federal Tax Law or Money Laundering charges.

On June 30, 2000, this officer received copies of checks from Internal Revenue (IRS) Agent Mike Palmer, Southern District of Georgia, which were obtained by search warrants during the above referred criminal investigation of Lawrence "Larry" Pinkoff. The checks were issued by Golden Isles Pharmaceuticals/Tropical Medical, the probationer's employer, payable to either the probationer or First Southeast Capital Corp., endorsed or deposited by the probationer, and deposited in seven different bank accounts, at two different banks, Nations and Capital/Union Planters, from August 18, 1998, through March 29, 1999. Of the seven accounts, only two of the accounts were ever reported by the probationer to this officer on either his Monthly Supervision Reports or Personal Financial Questionnaires. The checks reflect a sum of $2,348,984.88 was deposited in the seven accounts. At no time did the probationer report to this officer of ever receiving this referenced income.

## II  CHARACTERISTICS

The probationer has resided at 7900 SW 143 Street, Miami, Florida, since his placement on supervision. On November 2, 1999, the probationer paid in full the remaining $33,500 restitution owed the FDIC and $11,590 owed to the other victim, Big Ben Corporation. He has submitted his monthly documentation timely. Currently, he is employed as an independent contractor/sales representative for Golden Isles Pharmaceuticals, Inc./Tropical Medical Equipment Company, (all of which were targeted by search warrants) selling medical equipment and support services, earning approximately $50,000 per year.

Due to the above violations, this officer recommends a warrant be issued for the probationer's arrest. If Your Honor concurs, please indicate on the attached Petition.

Respectfully submitted,

FXW
Attachments

cc: Robert Lehner, AUSA
Ruben Oliva, Esq.

# United States District Court

for

### SOUTHERN DISTRICT OF FLORIDA

#### Petition for Warrant or Summons for Offender Under Supervision

Name of Offender: Louis F. Petrillo      Case Number: 93-442-CR-ZLOCH

Name of Sentencing Judicial Officer: The Honorable C. Clyde Atkins, Senior United States District Judge, SD/Fl.. (Now assigned to the Honorable William J. Zloch, United States District Judge, SD/Fl.)

Date of Original Sentence: March 21, 1995

| | |
|---|---|
| Original Offense: | Count One: Misapplication of Bank Funds, Title 18, U.S.C., §656, a Class "D" felony. |
| | Count Two: Bank Fraud, Title 18, U.S.C., §1344, a Class "D" felony. |
| Original Sentence: | Count One, one year and one day. |
| | Count Two, sentence suspended, placed on five years probation, to run consecutive to Count One. Ordered to make restitution of $1,983,160 to FDIC and $18,690 to Big Ben Corporation. On February 27, 1997, restitution to FDIC was reduced to $83,160. On October 27, 1999, restitution to FDIC was reduced to $40,000. |

Type of Supervision: Probation      Date Supervision Commenced: February 23, 1996

Assistant U.S. Attorney:      Defense Attorney:
Robert Lehner      Rubin Oliva

---

## PETITIONING THE COURT

[X] To issue a warrant
[ ] To issue a summons

The probation officer believes that the offender has violated the following condition(s) of supervision:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1.) | **Violation of Standard Condition**, by failing to follow the instructions of the Probation Officer. On January 15, 1999, and May 8, 2000, this officer instructed the probationer to submit documentation as to his whereabouts regarding nine authorized trips out side the Southern District of Florida. Hotel receipts reflect one overnight hotel stay instead of the two nights requested on his travel applications. As of this writing, the probationer has failed to comply. |

2.) Violation of Standard Condition, by failing to answer truthfully all inquires by the Probation Officer. On December 1, 1999, this officer was notified by Investigator Sandra Lozowicki, Office of the Attorney General, State of Florida, Medicaid Fraud Control Unit, that search warrants were served and carried out on this same date, pertaining to a criminal medicaid fraud investigation. The warrants were for the probationer's residence, past employments, and current employment locations. During the search of the probationer's residence, Agents for the State of Florida found $41,850 in US currency and $3,100 in traveler's checks. The probationer failed to notify this officer of his possession of $44,950 either on his Monthly Supervision Reports or his Personal Financial Questionnaires.

3.) Violation of Standard Condition, by failing to answer truthfully all inquires by the Probation Officer. On December 1, 1999, this officer was notified by Investigator Sandra Lozowicki, Office of the Attorney General, State of Florida, Medicaid Fraud Control Unit, that search warrants were served and carried out on this same date, pertaining to a criminal medicaid fraud investigation. On June 28, 2000, this officer received copies of checks from Keith Davidson, Investigative Analyst, Office of the Attorney General, State of Florida, Medicaid Fraud Control Unit, which were obtained by search warrants during the above referred criminal investigation. The checks were issued by First Southeast Capital, payable to the probationer, endorsed by the probationer, and deposited into three different bank accounts, at two different banks, Nations and Capital/Union Planters, from March 18, 1998, through June 25, 1999. None of the accounts were reported by the probationer to this officer on either his Monthly Supervision Reports or Personal Financial Questionnaires. The checks reflect a sum of $520,062.49 was deposited in the three accounts. At no time did the probationer report to this officer of ever receiving this referenced income.

4.) Violation of Standard Condition, by failing to answer truthfully all inquires by the Probation Officer. On March 23, 2000, this officer met with Internal Revenue (IRS) Agent Mike Palmer and US Customs Agent Karl Muller, of the Southern District of Georgia, who reported that there is an on going criminal investigation of Lawrence "Larry" Pinkoff, the owner of Golden Isles Pharmaceuticals/Tropical Medical Equipment and the probationer's employer. On April 14, 2000, this officer was notified by IRS Agent Palmer that a search warrant was served on Mr Pinkoff at his residence on March 30, 2000. On June 30, 2000, this officer received copies of checks from Internal Revenue (IRS) Agent Mike Palmer, Southern District of Georgia, which were obtained by search warrants during the above referred criminal investigation of Lawrence "Larry" Pinkoff. The checks were issued by Golden Isles Pharmaceuticals/Tropical Medical, the probationer's employer, payable to either the probationer or First Southeast Capital Corp., endorsed or deposited by the probationer, and deposited in seven different bank accounts, at two different banks, Nations and Capital/Union Planters, from August 18, 1998, through March 29, 1999. Of the seven accounts, only two of the accounts were ever reported by the probationer to this officer on either his Monthly Supervision Reports or Personal Financial Questionnaires. The checks reflect a sum of $2,348,984.88 was deposited in the seven accounts. At no time did the probationer report

to this officer of
ever receiving
this referenced
income.

U.S. Probation Officer Recommendation:

- [X] The term of supervision should be
- [X] revoked.
- [ ] extended for _ years, for a total term of _ years.

- [ ] The conditions of supervision should be modified as follows:

Respectfully submitted,

by

Frank X. Will
U.S. Probation Officer
Date: July 21, 2000

THE COURT ORDERS:

- [ ] No Action
- [X] The Issuance of a Warrant
- [ ] The Issuance of a Summons
- [ ] Submit a Request for Modifying the Conditions or Term of Supervision

Signature of Judicial Officer

8/8/00
Date

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 93-442-CR-ZLOCH

UNITED STATES OF AMERICA

    Plaintiff

    v.

LOUIS F. PETRILLO

    Defendant

**ORDER**

THIS MATTER is before the Court upon Defendant's Motion To Dismiss Probation Revocation Petition, In Part, For Failure To State an Offense (filed March 5, 2001). The Court having reviewed the Court file and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the aforementioned Motion is hereby DENIED.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of March, 2001.

WILLIAM J. ZLOCH
Chief United States District Judge

cc:
Robert Lehner, Esq., AUSA
Walter Reynoso, Esq.
Ruben Oliva, Esq.

EXHIBIT
2