**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

'01

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | CASE NO. 00-6334-CR-FERGUSON |
| LOUIS F. PETRILLO, | |
| Defendant. | Fla. Bar No. 100028 |
| | Fla. Bar No. 525693 |
| | Fla. Bar No. 626074 |

### NOTICE OF FILING DEFENDANT PETRILLO'S STATUS REPORT
### CONCERNING HIS DETERIORATED MEDICAL CONDITION

Defendant, Louis F. Petrillo, by and through his undersigned counsel hereby files this Notice of Deteriorated Medical Condition to apprise this Honorable Court of his current medical status.

### INTRODUCTION

The Defendant is a diabetic that has been housed at the Federal Detention Center (hereinafter "FDC") since December 1, 2000. From the time of his arrest, the Defendant has had chest pain and heart problems requiring medical treatment at the infirmary at FDC, as well as hospitalizations at Cedars Hospital and Jackson Memorial Hospital. On December 1, 2000, the Defendant suffered an apparent cardiac seizure and had to be treated by Dr. Ginart at the FDC infirmary. His sugar was erratic and he suffered high blood pressure. The Defendant was given two prescription medications: Insulin (for Diabetes) and Lispornil (for high blood pressure). Since that time, the Defendant's condition has worsened as described below.

### EMERGENCY ANGIOPLASTY: FEBRUARY 8, 2001

From December through early February, the Defendant continued to suffer from chest pains and had difficulty breathing. His condition worsened to the point where he was transferred on February 8, 2001, from the FDC to Cedars Hospital. At Cedar's a stress test was conducted which resulted in his immediate hospitalization for approximately *six days*. An emergency angiosplasty was performed on the



USA vs. Louis F. Petrillo
Case No. 00-6334-CR-FERGUSON
Page 2 of 5

right coronary artery to remove unacceptable blockage of blood to the heart. A "stent" was inserted during the procedure.

After insertion of the stent, Dr. Jimenez, Cedar's Chief Cardiologist, advised the Defendant that he should return within thirty (30) to sixty (60) days to have the other major artery unclogged. Dr. Jimenez also advised the Defendant that at said time, a stress test with thalium would be conducted to see if the stent that had been inserted was holding up. The Defendant was released from Cedars Hospital on February 13, 2001 and returned to the FDC. Dr. Jimenez directed the Defendant to take the following additional medications:

1. Lipodor - For cholesterol
2. Lavix - A blood thinner.
3. Lopressor - Heart medication.
4. Novasek - For high blood pressure.

## DR. JIMENEZ' APRIL 2001 RECOMMENDATION FOR IMMEDIATE ANGIOPLASTY

On or about mid-April, the Defendant's medical problems were still present. In mid-April, he was taken from the FDC to the personal office of Dr. Jimenez for examination. This examination took approximately two hours. Dr. Jimenez advised the Defendant that a stress test with thalium should be conducted on the repaired artery *as soon as possible.* He also advised that the angioplasty procedure should be performed on the other blocked artery as well.

Notwithstanding Dr. Jimenez' recommendations made to the Defendant, the Defendant was not taken back to the hospital. Instead, from mid-April to mid-May, the Defendant remained at FDC and continued to suffer from chest pains, had difficulty walking and breathing. He voiced these complaints to the physician assistants and the doctors at FDC.

USA vs. Louis F. Petrillo
Case No. 00-6334-CR-FERGUSON
Page 3 of 5

## LOSS OF CONSCIOUSNESS AND HOSPITALIZATION OF MAY 25, 2001 AT JACKSON MEMORIAL HOSPITAL

In early May, Dr. Ginart withdrew the Lispornil medication and transferred the Defendant to Dr. Franco at FDC. The Defendant was given nitroglycerin to relieve chest pain and improve his breathing. On Friday, May 18, 2001, the Defendant suffered extensive chest pains and started losing consciousness. He was seen at the FDC infirmary, given a cardiogram and provided oxygen. He was also given twelve pills of nitroglycerin during the course of the night. The Defendant's symptoms continued through the weekend and on Monday, May 21, 2001, the Defendant suffered severe chest pains and was returned to the infirmary for more oxygen and nitro pills. He was then released back to his cell.

On Wednesday, May 23, 2001, the Defendant was again seen by Dr. Francis. Dr. Francis advised the Defendant at the infirmary that he had recommended accelerating the stress test. Dr. Francis showed the Defendant a written recommendation noting the above.

The next day, at approximately 6:00 p.m., the Defendant lost consciousness and fell on his face. He was unconscious for fifteen to twenty minutes and has no recollection as to what happened. He was taken to the infirmary, given nitro pills, oxygen and an EKG. He suffered facial swelling, black eyes and bruising to his face, shoulder and knee. The Defendant also suffered severe head and neck pain. While in bed, the Defendant experienced periods of blackouts throughout the day and night. The Defendant was released to his cell after being treated at the infirmary that evening.

On Friday, May 25, 2001, at approximately 9:30 a.m., the Defendant was called to the infirmary. He was given an IV and an ambulance was called. The ambulance rushed the Defendant to Jackson Memorial Hospital for a CAT scan to check for subdural hematoma. The CAT scan was negative. The Defendant was kept at Jackson (Ward D) all day for observation and was released at 11:00 p.m. that evening *to Cedars Hospital*. The doctor at Jackson Memorial Hospital (name unknown) advised the

USA vs. Louis F. Petrillo
Case No. 00-6334-CR-FERGUSON
Page 4 of 5

Defendant that Cedar's should monitor his heart condition. The Defendant was not taken to Cedars but to FDC. The Jackson doctor also prescribed a medication for dizziness. Said medication was not provided to the Defendant until almost three days later.

## THE DEFENDANT REMAINS AT FDC WITHOUT APPROPRIATE MEDICAL DIAGNOSIS/TREATMENT

After returning from Jackson Memorial Hospital, the Defendant was made to remain in his cell with bed rest. He has sporadic loss of consciousness and the FDC authorities have changed his routine by permitting him to eat in his cell and to remain sitting (instead of standing) for headcount. The Defendant is now aided with a chair for support while bathing. Notwithstanding the Defendant's request to be taken to Cedars, he remains at FDC. Defense counsel as advised the Government (both AUSA Robert Lehner and Case Agent Lou Sellers) about the Defendant's condition and have also requested his transfer to Cedars. Finally, Defense counsel has made a special visit with Rick De Aguilar, the Lead Counsel for FDC requesting the Defendant's transfer to Cedars.

Respectfully submitted,

Law Offices of Walter A. Reynoso, P.A.
Co-Counsel for Defendant
Grove Forest Plaza
2937 SW 27th Avenue, Suite 107
Coconut Grove, Florida 33133
Telephone (305) 642-8961
Facsimile (305) 441-8745

By: _____
Walter A. Reynoso, Esq.

Law Office of Joseph S. Paglino
Lead Counsel for Defendant
12865 West Dixie Highway
North Miami, Florida 33161
Telephone (305) 758-8017
Facsimile (305) 892-8434

By: _____
Joseph S. Paglino, Esq.

-cr-06334-WDF  Document 64  Entered on FLSD Docket 06/05/2001

USA vs. Louis F. Petrillo
Case No. 00-6334-CR-FERGUSON
Page 5 of 5

Rojas, Oliva & Ventura, P.A.
A Counsel for Defendant
2250 SW 3rd Avenue, Third Floor
Miami, Florida 33129
Telephone (305) 856-6868
Facsimile (305) 856-7771

By: _____
Ruben Oliva, Esq.

### CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that a true and correct copy of the foregoing was furnished by mail to Robert Lehner, AUSA, Office of the United States Attorney, 99 NE 4th Street, 4th Floor, Miami, Florida 33132-2111, this 31st of May, 2001.

_____
Walter A. Reynoso, Esq.